THE PEOPLE, *ex relatione* John W. Mitchell, *v.* RICHARD N. WARFIELD, County Clerk of Saline County.

APPLICATION FOR MANDAMUS.

Upon the question of relocating a county seat, if the law only authorizes the clerk to canvass the votes cast on the question of relocation, and certify the result, without regard to other votes cast at the same election, he cannot give a certificate which will afford legal evidence that the county seat has been changed, in conformity with the requirements of the constitution.

A majority of the legal votes cast at a voting for a relocation of a county seat, is sufficient to determine the question. If the law authorizing the vote does not provide for determining the question, the courts may do so on proper application. Where the parties have commenced proceedings in another tribunal, to obtain an adjudication of the question, this court will not (except in extraordinary cases) interfere by mandamus.

THE People, on the relation of John W. Mitchell, present a a petition for a mandamus against Richard N. Warfield, county clerk of Saline county, to compel him to issue a marriage license authorizing the marriage of the relator and Mollie J. Provine.

The petition states that the relator is a free white male citizen of the county of Saline, over twenty-one years of age; that Richard N. Warfield is the county clerk of Saline county, and that it is a part of his official duty to give marriage licenses to persons entitled thereto under the statute of this State; that on 12th March, 1858, the said Richard N. Warfield was holding, keeping and exercising the duties of his said office at the town of Harrisburg, in the county of Saline; that at such time the relator applied to the said county clerk, at Harrisburg, to give a marriage license authorizing the joining in marriage of the relator and Mollie J. Provine; that the parties were competent to enter upon such relation with each other; that the consent of all persons interested had been obtained, of which the said county clerk had notice.

The petition further states, that the relator tendered the lawful fees to the county clerk, but the said county clerk refused to issue the marriage license demanded, and still refuses so to do.

The petition prays for the issue of an alternative writ of mandamus against the said Richard N. Warfield, county clerk of Saline county, commanding him to give the marriage license, or to show cause why he does not give the same.

The defendant, Warfield, waives the issuing and service of the alternative writ, and makes his return, in which he admits all the statements in the petition, but shows, as the cause why he refused and still refuses to give the marriage license, as follows:

That, by virtue of an act of the General Assembly, entitled "An Act to relocate the county seat of Saline county," approved February 7, 1857, on Tuesday after 1st Monday in November, 1857, an election was held in Saline county for the relocation of the county seat of the said county.

That 1440 votes were polled at the election. That Harrisburg received 725 votes, Raleigh 689 votes, and 26 persons voting at said election did not vote for either place.

That, in compliance with the aforesaid law, and the election thereunder, on the 12th December, 1857, he removed his office of county clerk from Raleigh to Harrisburg.

That on the 19th December, 1857, one Lenson B. Carnes filed his bill in chancery against defendant and other county officers.

That, at a special term, Circuit Court of Saline county, held at Raleigh, 8th March, 1857, their answers and replications thereto were filed.

That, on the 12th day of March, at said court, the court awarded an injunction against said defendant and the other county officers, as prayed for in the bill of complaint.

That, when the relator applied for said license, defendant was at a loss to know how to proceed, the law and election thereunder requiring him to hold his office at Harrisburg, and the injunction (awarded but not issued) requiring him to hold his office at Raleigh.

That he refused to issue the marriage license as stated.

That he submits the question whether it is his duty to remove to Raleigh with his office, or keep the same in Harrisburg, and issue to said relator the marriage license as applied for.

Submits his return, and prays to be dismissed with costs, etc.

And the said relator comes and files his demurrer to said return of the defendant, etc.

The following is an abstract of the bill in chancery, made a part of the answer to the foregoing petition:

The complainant, a tax-payer and citizen of Saline county, shows that by an act of the General Assembly of the State of Illinois, Raleigh was made the county seat of Saline county, and still is said county seat; that courts probate, county and circuit, had been held there, and that the circuit and county clerks and sheriff had resided and kept their offices at Raleigh.

And that public buildings had been erected at Raleigh, at the expense of the county.

Shows the 5th sec., 7th art., constitution, in relation to the removal of county seats.

Shows act of legislature, approved 7th February, 1857, entitled " An Act to relocate the county seat of Saline county."

Avers that said act is unconstitutional, for two reasons:

1st. That the removal of the county seat shall take place upon a majority of those voting for or against such removal casting their votes for Harrisburg, and not a majority of the voters of the county, as contemplated by the constitution.

2nd. That said law does not fix the point to which said county seat was to be removed.

Shows that notice was given and an election held under said law, for the relocation of the county seat, on Tuesday after 1st Monday in November, 1857.

That 1440 votes were cast at said election, 725 for Harrisburg, 689 for Raleigh, and 26 who did not vote for either place

for county seat, showing an apparent majority of five votes in favor of Harrisburg.

He avers that forty or fifty persons entitled to vote at said election did not vote.

He avers that 123 votes cast at said election for Harrisburg were illegal votes; that the number of legal votes cast at said election was 1317—602 for Harrisburg. Schedule of illegal votes annexed.

That the election of Harrisburg was the result of fraud.

And that Raleigh was elected the county seat at said election. That said election is void by reason of frauds, etc.

That R. N. Warfield, county clerk, since said election, removed his office from Raleigh to Harrisburg; that Hiram Burnett talks of removing his office to Harrisburg.

That Wm. Roark, sheriff of said county, has also removed his office to Harrisburg.

That Moses P. McGehee, James Stricklin and Wm. Watkins, members of the County Court, are threatening to hold the courts at Harrisburg.

That R. N. Warfield, county clerk, removed his office in compliance with an order of said court.

And are about contracting for the erection of public buildings at Harrisburg, to the injury of the tax-payers of the county.

That the County Court threatens to sell the public buildings at Raleigh.

That defendants in concert refuse to recognize Raleigh as the county seat, but claim that Harrisburg is the county seat.

Prays for an injunction against the defendants, restraining and enjoining the clerks and sheriff from keeping or holding their offices at Harrisburg, and requiring the county clerk and sheriff to return to Raleigh; restraining the county judge and county justices from holding their courts at Harrisburg; from contracting for the erection of public buildings there; from selling the public buildings at Raleigh; from making roads to or from Harrisburg, or spending any county funds for the improvement thereof, etc.

The bill is sworn to.

The separate answer of Moses P. McGehee admits that Raleigh was the county seat; denies that it now is the county seat.

Admits the passage of the law of February 7th, 1857; denies its unconstitutionality.

Admits the notice and the election under the law, and the aggregate vote polled at said election, and the vote Harrisburg and Raleigh, etc., and that 26 voters did not vote for either place; denies that a majority of the voters of the county did

not vote for Harrisburg; denies that illegal votes were cast for Harrisburg; gives a list of persons charged in bill to be illegal voters, who are legal voters, etc.; states nothing as to the others.

Charges that Harrisburg received 725 legal votes at said election.

Denies that the persons named upon schedule attached to bill are illegal voters.

Charges that 78 votes, cast for Raleigh at said election, were illegal and fraudulent.

Denies that Harrisburg was elected by fraud; charges that it was the free choice of the people of the county.

Admits that, after it was ascertained that Harrisburg was the county seat, R. N. Warfield, county clerk, removed his office to Harrisburg, about the 12th December, 1857, and entered upon the discharge of the duties of his office there.

Admits that, as county judge (after the county clerk removed his office there), he held his courts at Harrisburg, both county and probate.

Admits that Wm. Roark, sheriff of said county, removed his office to Harrisburg, also.

Denies that the County Court has ever made an attempt to erect public buildings at Harrisburg, squandered any of the public money, or contemplates selling the public buildings at Raleigh.

Knows nothing of persons entitled to vote at said election who did not vote thereat.

Charges that, when the law of 7th February, 1857, was passed, Harrisburg was known as a town near the centre of the county, six miles south of Raleigh; contained a large number of inhabitants; was regularly laid off, platted, and known by the voters of said county.

Signed, sworn to, etc.

W. B. SCATES, and G. B. RAUM, for Relator.

R. S. NELSON, and B. C. COOK, for Respondents.

WALKER, J. The law for the election for the relocation of the county seat of Saline county, under which this election was held, was not as broad as the requirements of the constitution authorizing a relocation of county seats. That provision requires that a majority of the voters of the county shall vote for the change. This law only requires the clerk to canvass the votes cast on the question of relocation, and certify the result, without regard to other votes cast at the same election. Beyond this, in that certificate, he is not authorized to go.

Therefore, under that law, he can give no certificate which will afford legal evidence that a majority of the voters of the county have voted for the one place or the other. His certificate, therefore, cannot afford legal evidence that the county seat has been changed, under the provisions of the constitution. That must be an open question to be tried in any legal mode, the same as if the law had not authorized him to canvass the vote at all. The statute itself cannot be sustained under the constitution, if we adhere to its literal expressions, for it requires, in order to relocate the county seat, but a majority of the votes cast on the question of relocation, whereas the constitution goes farther, and requires a majority of the voters of the county. The law may be sustained by reading it in the light of the constitution, and construe it as giving effect to the affirmative vote, when such affirmative vote is by a majority of the legal voters of the county. The legislature may have assumed, and doubtless did, that all would vote upon the question, and such is the practical effect if we count the votes in the negative, which are silent on the subject. In this mode alone can the law be sustained authorizing township organization, which has been in operation in most of the northern counties of the State since the adoption of the constitution. It is a question of no small difficulty to determine in what mode it shall be ascertained who are the voters of the county, so as to determine whether a majority have voted in favor of a relocation.

The same difficulty arises under the law authorizing township organization. This portion of the constitution must receive a practical construction. We understand it to assume—and such, we believe, was the understanding of its framers—that the voters of the county referred to were the voters who should vote at the election authorized by it. If we go beyond this, and inquire whether there were other voters of the county who were detained from the election by absence or sickness, or voluntarily absented themselves from the polls, we should introduce an interminable inquiry, and invite contest in elections of the most harrassing and baneful character, if we did not destroy all of the practical benefits of laws passed under these provisions of the constitution. We hold, therefore, that a majority of the legal votes cast at this election is sufficient to determine the question of a relocation of the county seat. See 1 Sneed R. 692.

As the law itself provided no mode for the determination of this question, it must be left to the courts of law for their adjudication, whenever a dispute arises, and is presented to them in proper form. Of this subject, the courts of equity have un-

doubted jurisdiction.   See case of Horn R. Kneass, 2 Select Equity Cases, by Parsons, 553.

The case before us shows that a bill in equity was filed in due form, and by proper parties, in the Circuit Court of Saline county, for the purpose of settling this very question, which is now pending and undetermined, and in which a temporary injunction has been issued, restraining the present defendant from keeping his office at Harrisburg, to which it is insisted by the relator, that the county seat of Saline county was removed at the election referred to.   Admitting that this court has jurisdiction to try the question in this proceeding for a mandamus, we are not bound to do so, nor is it proper that we should do so, when another court has acquired jurisdiction properly, and is proceeding to exercise it, especially when we are asked to compel a party to do a thing from which he is restrained by an injunction issued by a court of competent jurisdiction.   We leave the question, therefore, to be settled by that court, which has every facility of purging the poll books, and ascertaining all the facts upon which a correct decision necessarily depends.   In the meantime, as there has been, and can be, no other legal mode of determining the result of this question, the county seat must remain unchanged.

The application for a mandamus must be refused.