THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.*

JESSE C. WHEATON

*v.*

JOEL WIANT.

1. COUNTY SEAT—*removal of—constitution.* Where an act of the legislature designated a place by name to which it was proposed to remove a county seat, and authorized the voters of the county to vote for and against its removal to that point, this was a compliance with art. 7, sec. 5, of our constitution.

2. SAME—*majority vote, how ascertained.* Where an election on the question of the removal of a county seat happens to be held at the same time there is another election, as, for a circuit judge, the vote cast on the single question of removal will not alone govern as to whether a majority of all the legal votes of the county were given in favor of removal, but it must appear that a majority of all the votes cast at that election were so given.

3. CERTIFICATE OF VOTE. Where the certificate required of the county clerk in such a case, omitted to state the number of votes cast at the election, so it might be seen whether the proposition had been carried or lost, the returns of the judges and clerks of election may be resorted to for the purpose of ascertaining that fact. The object of such an election will not be defeated for the want of such a statement in the certificate.

4. CHANCERY—*jurisdiction to correct and purge polls.* If fraudulent votes have been cast at an election to determine upon the removal of a county seat, and the law authorizing the election fails to provide any mode for contesting the election and a re-canvass of the vote, being a matter of public concern, equity will entertain jurisdiction to relieve against the fraud and to carry out the intention of the law in submitting the question to a vote of the county.

5. MANDAMUS—*when it will be refused.* Where a bill in chancery has been filed and is still pending, on the trial of which the question whether fraudulent votes were cast, and carried the question of removal of a county seat, is necessarily involved, and the court has competent jurisdiction to correct the vote and settle the question, this court will not determine the question as to which point is the county seat on an application for a writ of mandamus, but will leave the circuit court to determine the question in the chancery suit.

6. CHANCERY—*jurisdiction—contested election.* While a court of equity will not entertain a bill to determine which of two persons is elected to an office, it may to determine where a county seat is located, although it may involve the question whether illegal votes were cast at an election to determine its location, and to correct the canvass of the vote.

This was an application for mandamus, to compel the county treasurer of Du Page county to transfer his office and place of business from Naperville to Wheaton, in that county.

Messrs. VALLETTE & VAN ARMAN, for the relator.

Messrs. GOUDY & CHANDLER, for the respondent.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The respondent is the county treasurer of Du Page county, and is keeping his office, as such, at Naperville, and the object of this proceeding is to compel him to remove it to, and keep it at Wheaton. Naperville, it is admitted, was the county seat of that county, and still is, unless it has been changed under the provisions of the constitution and an act of the legislature, approved Feb. 13, 1867. By that act, the voters were authorized to vote upon the question of removing the county seat from Naperville to the town of Wheaton. A vote was had at the time, and in the manner required by the act, and the returns from the various precincts showed a majority of 117 in favor of removal; that, after the result was announced to them, the board of supervisors of the county selected a site for county buildings at Wheaton, adopted a plan therefor, and

appointed a committee to superintend their erection. The buildings were erected, and on the 22d of July, 1868, the grounds upon which they had been constructed were conveyed to the county, for its use and benefit; and on that day, the board of supervisors being in session, by a vote of a majority of those present, accepted the deed and buildings previously erected; that respondent refused to remove his office to, and hold it in Wheaton.

By the return, it is insisted that the law under which this vote was had is unconstitutional, because it does not designate the point to which it was proposed to remove the county seat, as required by article 7, section 5, of the constitution. This objection does not, in fact, exist. The first section of the act (Private Laws, 1867, vol. 3, p. 894) provides for a vote being taken for and against the removal of the county seat, from its present location at Naperville, "to the point of the incorporated town of Wheaton, in said county." This fixed the point as the constitution requires. It designates the incorporated town of Wheaton as the point to which it is proposed to remove the county seat, and provides for an election, as required by that section.

It is also objected, that it does not appear that the majority of the legal voters of the county voted at the election for a removal to Wheaton. The constitution requires that a majority of the voters shall vote in favor of the removal before it shall be done, and the act requires the same. In this case, it appears that the majority of the votes cast at the election on the question, were for removal, but the clerk's certificate does not show that those voting in its favor are a majority of the votes cast at that election. It was held, in *The People ex rel. v. Warfield*, 20 Ill. 160, that to give this provision of the constitution a practical operation, we must presume that it was the intention of the framers of that instrument that the voters would all vote, and that the majority of those voting should determine the question. To give it a different construction,

34—48TH ILL.

would involve an inquiry, whether there were other voters of the county who had, from any cause, abstained from voting, and this would lead to interminable inquiry, and invite contests in such elections, which would be embarrassing and baneful, if it did not destroy all of the practical benefits of laws passed under these provisions of the constitution. The fourth section of the law requires the judges and clerks of elections to make returns as in other elections; and the fifth section requires the county clerk to canvass the returns, and to open and count the votes cast at the election, and if it shall appear that a majority of the legal voters of the county have voted for removal to Wheaton, then that place shall be the county seat of the county, and the county clerk is required to make a certificate of the result of the election, and spread the same on the records of the board of supervisors.

In Warfield's case, there was no vote taken at that election, except upon the question of removal of the county seat, and that vote was adopted as the means of ascertaining the number of legal voters of the county, and whether the majority was in favor of or against removal. In this case, however, there was, at the same time, an election held for circuit judge, which was a regular election. We therefore have, in this case, additional means of ascertaining the whole number of voters of the county. If the return of the various poll books of the county showed a larger number of votes cast for circuit judge, or other officer, than were cast for and against removal of the county seat, then that should be taken as the number of voters of the county, and it should appear that a majority of the voters at that election had cast their votes in favor of removal before the county seat could be changed. It is not the vote cast upon that single question that is to govern, where it occurs at any other election held at the same time; but it must appear that a majority of all the votes cast at that election were in favor of removal. When there is no other election

held at that time, the returns of the officers, of votes on that question, will govern.

In the certificate the clerk has made, the aggregate number of votes cast for, as well as those cast against removal, are given; but he failed to give the number of votes which were cast at that election. Hence this certificate is not, of itself, evidence that the proposition had been carried; but as the certificate of that officer is designed to embrace the facts as they exist, and that he may not have the power to defeat the will of the voters of the county, a resort may be had to the returns of the judges and clerks of the election, to ascertain whether those voting for removal were a majority of all the votes cast at that election, whether for circuit judge or on this question. The law has not, in terms, required that this cer tificate shall state the whole number of votes cast, but the law requires that it shall state the result of the election. This would seem to imply that he was to state whether the majority was for or against the proposition; but even if a fair construc tion of this provision requires that the aggregate vote of the county, cast at that election. should be given in the certifi cate, still the act does not make the certificate conclusive, or prohibit a resort to other sources of evidence which are proper and legitimate, to ascertain the number of votes that were cast. It is clear, that on an application for a mandamus to com pel a proper certificate to be made, the clerk would be required to certify that fact, if it be essential to the validity of the cer tificate; and we are of the opinion that it may be shown from the returns on file in the clerk's office.

It is also insisted, that there was irregularity in conducting the election at some of the precincts, and that illegal votes were cast at the election, and in favor of "removal." The case before us shows that there are no less than three bills in equity and a writ of *quo warranto* now pending in the circuit court, growing out of this controversy, by one or more of which the questions can be investigated, a re-canvass of the

votes had, the polls purged, and the questions settled; and admitting, as was said in *The People* v. *Warfield*, that this court has jurisdiction to try the question in this proceeding for a mandamus, we are not bound to do so, nor is it proper that we should, when another court has acquired jurisdiction properly, and is proceeding to execute it, especially when we are asked to compel an officer to do that which he is enjoined from doing by a court of competent jurisdiction. So, in this case, the circuit court having acquired jurisdiction of the question, we must decline to take cognizance of it, and will leave it to the determination of the circuit court.

It is, however, objected that the case of *Moore* v. *Hoisington*, 31 Ill. 243, overrules the case of *The People* v. *Warfield*. That was a bill filed to correct a mistake in the return of votes given for town officers, and it was held that chancery would not take jurisdiction, because the law had provided a mode of contesting elections; and even if that case was not embraced in those provisions, rather than exercise a doubtful jurisdiction, to consider the case as omitted from the general law, but not on that account conferring jurisdiction upon a court of equity. In this case, the law has provided no means of contesting the election or correcting the vote then given; and if frauds were committed, and the returns do not, for that reason, show what was the expressed will of the voters of the county, the design of the law, and the intention and desire of the majority of the county would be defeated, unless the courts can afford a remedy. This is a case unlike a mere contest of two individuals as to which shall exercise the powers and perform the duties of an office. In that case, the individuals are immediately interested, and the public remotely; but, in this case, it is a matter of public concern to the people of the county. In that, the law has afforded an ample remedy, by conforming to the statute authorizing them to contest the election, to determine which is entitled to the office, while in this, no means are provided by the statute for carrying into

effect the will of the majority under the law, when, apparently, thwarted by fraud, accident or mistake—hence the necessity of equity to entertain jurisdiction and afford relief.*

The two decisions proceed upon different principles, and in no wise conflict. While we hold that equity may take jurisdiction in a case like the present, we also hold that it should not where the contest of the election is to determine which of two persons is entitled to an office. The mandamus must be refused.

*Mandamus refused.*

*NOTE BY REPORTER.—On the question of jurisdiction, see *Boren* v. *Smith et al.*, 47 Ill. 482.