## SAMUEL H. MELVIN *et al.*

### *v.*

## CHARLES S. LISENBY *et al.*

1. ELECTIONS — *votes cast supposed to be all the legal votes.* The presumption is, that the vote cast at an election held according to law, is the vote of the whole number of legal voters, and this presumption can not be rebutted by proof of the number of votes cast at an election held in the preceding year.

2. MUNICIPAL BONDS—*when they may be registered in the Auditor's office, under the Funding Act of April* 16, 1869. Under a law authorizing a county to subscribe to the stock of a railroad company, upon condition that a majority of the votes cast at an election on the question should be in favor of it, an election was held resulting in a majority in favor of the subscription, and the subscription was made and bonds issued: *Held,* that the bonds were rightfully registered in the Auditor's office under the Funding Act of April 16, 1869, which requires that the subscription upon which bonds sought to be registered were issued, should have been voted for by a majority of the legal voters living in the county, it being the presumption that the vote cast at the election on the question of subscription, was that of all the voters of the county.

3. SAME—*not void by reason of defective execution.* Where bonds of a county are legally authorized to be issued by a vote of the people, and by the law authorizing the vote it is provided that the bonds shall be executed by certain officers, and countersigned by the treasurer of the county, it was *held,* that the omission of the treasurer to countersign the bonds is a mere defect in the execution of them, which a court of equity would, in the absence of a remedy at law, ordinarily supply, and that an injunction restraining the collection of taxes for the payment of such bonds should not be allowed.

APPEAL from the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. HAY, GREENE & LITTLER, for the appellants.

Messrs. WELDON & BENJAMIN, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill filed by sundry citizens and tax-payers of DeWitt county, in behalf of themselves and all other tax-payers in the county, to enjoin the collection of certain taxes extended on the collector's books by the county clerk, in pursuance of a certificate of the amount thereof from the Auditor of Public Accounts, as being necessary to meet the interest on $175,000 of bonds purporting to be those of DeWitt county, which had previously been registered in the office of the Auditor, and to have the bonds declared null and void. The court below, by its decree, enjoined the collection of any taxes for the purpose of paying the interest or principal of the bonds, until they should be countersigned by the treasurer of the county.

The defendants appealed.

The only grounds which appellees' counsel, in their argument, rely upon in support of the bill and decree, are:

1. That a majority of the legal voters living in DeWitt county were not in favor of the subscription, and that therefore the tax levied by the Auditor under the Funding Act of April 16, 1869, is illegal.

2. That the bonds are invalid, because they are not countersigned by the treasurer of the county.

The bonds were issued to the Gilman, Clinton and Springfield Railroad Company, on account of a subscription of $175,000 to the capital stock of said company, which had been authorized by a popular vote of the county, under the amendatory act of the company's charter, approved March 10, 1869. The act provided that, to aid in the construction

of the road, any county lying along or near its line might subscribe to the capital stock of the company, not exceeding the sum of $200,000; that no such subscription should be made until the question of so subscribing had been submitted to the people of such county. The 4th section of the act providing that, "if it shall appear that a majority of all the legal voters of such counties, cities, incorporated towns or townships *voting at such election,* have voted for subscription, it shall be the duty of the county court, or chairman of the board of supervisors of such county," etc., "to subscribe to the capital stock of said railroad company," etc. It is further provided that the chairman of the board of supervisors shall also execute to the company, in the name of the county, bonds for such subscription; that the bonds shall be signed by such chairman, and by the county clerk, attested by his official seal, and countersigned by the treasurer of the county.

To entitle any bonds to be registered under the provisions of said Funding Act of April 16, 1869, or to receive any of the benefits of the act, it is thereby required that the subscription creating the debt should have been first submitted to an election of the legal voters of the county, etc., and that a majority of the legal voters living in the county, etc., were in favor of the subscription.

It is admitted, by a stipulation in the record, that, at the election of county officers in 1868, in the county of DeWitt, 2986 votes were cast for sheriff; that, at the special election, in June, 1869, (being the election in regard to this subscription,) there were cast for subscription to the railroad stock, 1418; against the same, 975; and that, on the registry list made for said election, there were 3267 names placed as legal voters.

The Funding Act of April 16, 1869, requiring, in order to the registry of the bonds in the office of the Auditor, that the subscription should have been voted for by "a majority of the legal voters living in the county," it is urged, is something different from a majority of the voters voting upon the

5—72D ILL.

question, and that, although there was here the last named majority, yet, as the number voting for subscription was less than a majority of the names on the registry list made for such election, and also less than a majority of the votes cast at the election in the previous year of 1868, it is contended that proof is thereby made that " a majority of the legal voters living in said county" were not in favor of the subscription. But how was it to be ascertained whether a majority of the voters in the county were in favor of the subscription?

The mode provided by law for ascertaining the sense of the legal voters upon the question, was by a vote at a special election called for the express purpose of determining the question, on public notice given.   There would appear to be no other practicable way in which the matter could be determined.

Similar phraseology, in other cases, has been thus construed by this court in repeated decisions.   Section 5 of article 7 of the constitution of 1848 required, in order to the removal of a county seat, that a majority of the voters of the county should have voted for the removal; and section 6 of the same article provided, that any county might adopt township organization, whenever a majority of the voters of the county, at any general election, should so determine.   It has been held, with respect to each of those cases, that the voters of the county there referred to, were the voters who should vote at the election called to vote upon the question; or that the vote at such election should be adopted, as the means of ascertaining the number of legal voters of the county.   *The People ex rel.* v. *Warfield*, 20 Ill. 159; *The People ex rel.* v. *Garner*, 47 id. 246.

In *The People ex rel.* v. *Wiant*, 48 Ill. 263, it was held, in regard to an election for the removal of a county seat, that, where there was another election held at the same time, the return of the votes cast at such latter election might be resorted to as an additional means of ascertaining the whole number of the voters of the county, and that a majority of all

the voters at that election must have been in favor of the proposition for the removal of the county seat; but that, where there was no other election held at the time, then the returns of the proper officers of the votes on the question would govern.

In *Garner's case*, it was held that the presumptive evidence that the vote cast at the election upon the question was that of the whole number of legal voters in the county, could not be rebutted by the registry lists of the election, and we must hold, in consistency with previous rulings, that it can not be rebutted by proof of the number of votes cast at an election held in the preceding year. See, also, *St. Joseph Township* v. *Rogers*, 16 Wall. 664, and cases there cited.

*Dunnovan* v. *Green*, 57 Ill. 63, referred to, is not in point, as that was a case on demurrer to the bill, which alleged that a majority of all the legal voters living in the township had not voted for the subscription, and the truth of this statement was admitted by the demurrer. This disposes of the first point, in favor of the right of having these bonds registered, and it is only as touching that right, and not the validity of the bonds, that the question just considered is material, the above amendatory act only requiring a majority of the votes at the election upon the question.

As respects the second point, that the bonds are not countersigned by the treasurer of the county, it is the case of the defective execution of an instrument.

The county of DeWitt, by its authorized agent, in pursuance of a vote of the people of the county, made a contract of subscription of $175,000 to the capital stock of this railroad company. In attempted execution of the contract, the bonds in question were issued. They were signed by the chairman of the board of supervisors and by the county clerk, and attested by the official seal of the latter, and were delivered to and accepted by the railroad company, as in completion of the contract for subscription, and in payment for the stock subscribed for. The bonds were negotiated by the company for

full value, before the suit was instituted. But the bonds are not countersigned by the treasurer, as they are required to be by the act authorizing the subscription. In that circumstance, they lack in a complete execution. For aught that appears, it was an accidental and unintentional omission.

To grant the relief asked for by the bill, in such case, would seem to be to reverse the accustomed action of a court of equity. It is the especial province of such court to enforce the specific performance of agreements, to aid and correct defects or mistakes in the execution of instruments and powers. It is a maxim, that equity looks upon that as done which ought to have been done—the true meaning of which is, that equity will treat the subject matter, as to all collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been, not as the parties might have executed them. 1 Story Eq. Jur. sec. 64 g.

The important thing here was the authorizing of the subscription by a vote. That having been done, what followed to be done consisted in duties which the act prescribed to be performed by certain officers of the county, and the countersigning by the treasurer would seem to be the least essential of the prescribed circumstances of the execution of the bonds. It was but the signing, as a subordinate officer, a writing signed by a principal or superior, to attest the authenticity of the writing. The statute did not make the bonds void, if not countersigned by the treasurer.

The supplying of such a defective circumstance in the execution of an instrument or power would, in the absence of a remedy at law, be within the ordinary remedial power of a court of equity.

The court is called upon here, not to aid in the defective execution of these bonds, and interpose in their support, but it is asked to lend its aid to enable advantage to be taken of this defect of execution of the instruments, in defeat of the execution of a fair agreement, and to prevent the enjoyment

of a benefit which might be derivable from the bonds in the condition they now are. The relief sought appears to us to be in opposition to all the cardinal principles of the exercise of equity jurisdiction.

It is a different question from the one, whether an action at law would be maintainable on the bonds.

We are of opinion that the appellees do not stand upon a ground of superiority which entitles them to come into a court of equity for relief, and that there is a countervailing equity on the other side to induce a court of equity to remain passive.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. Chief Justice Breese and Mr. Justice McAllister dissent, on the ground that, the statute having prescribed a particular mode to be pursued by the municipal officers, in the execution of the bonds, it impliedly prohibits any other mode. The doctrine of aiding the defective execution of the power has no application to a power conferred by statute on public officers, and equity will follow the law.