JAMES HANLEY et al. vs. GEORGE P. WETMORE et als.

Pub. Stat. R. I. cap. 192, § 22, provides: "No suit in equity shall be defeated on the ground that a mere declaratory decree is sought, and the court may make binding declarations of right in equity without granting consequential relief."
*Held,* that this provision authorizes a declaratory decree only when the bill in equity shows a right to actual relief, either immediate or prospective.
A bill in equity was brought by certain citizens, alleging that for ten years they had been legally engaged in the liquor business, and were the owners of property which would be greatly injured in value if a prohibitory amendment to the state constitution had been adopted.   The respondents were state officers who had been made a counting board of the ballots cast on the amendment by the act of submission.   They were made parties individually and officially.   The bill asked for discovery, and for a declaratory decree that the amendment had not been adopted because the act of submission was unconstitutional, and because the required majority in favor of the amendment was made up by including ballots illegally cast.
On demurrer to the bill, —
*Held,* that the court had no power in equity to give relief against the respondents, and that the demurrer must be sustained.

BILL IN EQUITY for discovery and a declaratory decree.   On demurrer to the bill.

*Benjamin F. Thurston, Edwin Metcalf,* Attorney-General, and *Walter H. Barney,* in support of the demurrer.

*Charles E. Gorman & Arnold Green,* contra, cited *Koehler & Lange* v. *Hill,* 60 Iowa, 543 ; *People ex rel. Mitchell* v. *Warfield,* 20 Ill. 159 ; *Boren* v. *Smith et al.* 47 Ill. 482 ; *People* v. *Wiant,* 48 Ill. 263 ; *Dickey et al.* v. *Reed,* 78 Ill. 261.

*October* 4, 1886.	DURFEE, C. J.	The principal object of this suit is to have the court make a decree declaring that the proposition of amendment to the Constitution of the State, denominated the fifth amendment, which was recently voted upon, has not become an amendment to the Constitution, because it was not submitted to be voted upon in the manner prescribed by the Constitution, and because, among the votes cast for or against its adoption, 4,200 were received from persons who were not qualified to vote, being registry voters whose taxes had been paid by others, and without their votes it did not receive the requisite three fifths majority.	The amendment declares that " the manufacture and sale of intoxicating liquors to be used as a beverage shall be prohibited," and that " the General Assembly shall provide by law for carrying the amendment into effect."	The suit is brought by James Hanley, Rowland L. Rose, Thomas Grimes, Samuel A. Wesson, and Nicholas Molter, who describe themselves as " of the city and county of Providence, in the State of Rhode Island, and all citizens of the United States and of the State of Rhode Island, and qualified electors in said city," and who allege that " they and each of them are, and have been for the ten years last past, legally engaged in the business of selling malt, spirituous, and intoxicating liquors for a beverage in this State, under and by authority of licenses granted to them in pursuance of the laws of this State, and are the owners of property of great value acquired in the lawful pursuit of said business, the value and use of which is greatly depreciated and injured by the amendment, . . . if the same has been legally adopted."	The suit is brought against " George P. Wetmore, of the city and county of Newport, in said State of Rhode Island, individually and as governor of said State ; Joshua M. Addeman, of the city and county of Providence, in said State, individually and as secretary of state of said State ; and Samuel P. Colt, of the town and county of Bristol, in said State, individually and as attorney general of said State."	The bill, in addition to the declaratory decree aforesaid, asks for discovery. The defendants demur, raising two questions, or sets of questions, namely, *first*, whether the bill states a case which is of equitable cognizance or jurisdiction ; and if so, *second*, whether it states a case which entitles the complainants to the discovery and decree

prayed for. By our direction the case has been argued only on the question of jurisdiction, and that question only is before us for decision.

In support of the demurrer for want of jurisdiction, the defendants contend that the court has no right to entertain the suit, *first,* because the question whether the amendment has been duly adopted is not a judicial question to be decided by the court, but a political question to be decided by, or as provided by, the General Assembly, and has been so decided, the decision having been proclaimed a few days after this suit was instituted; and, *second,* because the bill does not show that the defendants have any such interest in, or relation to, the subject-matter of the suit as entitles the complainants to call upon them to answer or defend it. The second point comes up the more properly for adjudication first, for it would be useless for us to decide that the question involved is judicial if, after so deciding, we could go no further for want of proper parties.

The suit, as we have seen, is brought against the defendants both as individuals and as state officers. It asks for discovery and a declaratory decree. The complainants, however, do not show any ground for discovery unless they are entitled to the decree; for they do not ask for it in aid of any suit at law, and moreover, if the defendants are not proper parties for the reasons alleged, then they are mere witnesses, and it is well settled that a suit for discovery does not lie against mere witnesses. Story's Eq. Juris. §§ 74, 1499; Pomeroy's Eq. Juris. § 119. The only question, then, is, Are the complainants entitled to the declaratory decree? for, if they are, there is no dispute but that they are entitled to discovery. Our statute, Pub. Stat. R. I. cap. 192, § 22, provides that " No suit in equity shall be defeated on the ground that a mere declaratory decree is sought, and the court may make binding declarations of right in equity without granting consequential relief." The provision is copied from an English statute, and in England it has been decided that it enlarges the jurisdiction only so far as to enable the court to make declaratory decrees in cases where remedial decrees would be proper if asked for. Daniell's Chan. Plead. & Prac. 1001, note, 2181, note; *Rooke* v. *Lord Kensington,* 2 Kay & J. 753, 760. We know of no reason why our act should be

more broadly construed. At the most, our act cannot be held to authorize a declaratory decree in any suit, unless a case is stated in the bill which shows a right to actual relief, either immediate or prospective, against the defendants. The English construction is that the right must be immediate. We do not say that this construction is too narrow; but for this case we grant the broadest construction which, it seems to us, can be seriously contended for.

Does the bill show any relation existing between the parties which entitles, or which can ever entitle, the complainants to relief in equity against the defendants as individuals? We cannot discover that it does. For anything that appears, the complainants have no right or claim, at law or in equity, which they could ever enforce against the defendants, as individuals, if we were to declare that the amendment has not been adopted. For anything that appears, the defendants, as individuals, have no right or claim which they could ever enforce against the complainants, if we were to declare the amendment duly adopted. The decree, therefore, if we were to make it, would be utterly nugatory. It would not bind the parties, for the parties do not hold any relation to each other by virtue of which it can apply between them. It would not bind anybody but the parties; for, the suit being between the parties as individuals, it is elementary law, that nobody but parties and privies can be bound by it. It would be decree in the air, a mere opinion or *obiter dictum*, obligatory upon nobody. If the suit be a suit against the defendants as individuals, the defendants might consent to the decree which is asked for, and it would neither do them any harm or the complainants any good. It would be *brutum fulmen*. Of course the court will not make such a decree.

Does this bill show any relation between the parties such as does or ever can entitle the complainants to relief against the defendants as state officers? No such relation is averred, and none such occurs to us which we can take judicial notice of. It is true the Constitution makes it the duty of the governor to " take care that the laws be faithfully executed ; " but the governor in performing this duty has no arbitrary power, but must himself proceed according to law. He could not, upon his own finding

that buildings belonging to the complainants are used for the manufacture or sale of intoxicating liquors for a beverage, proceed to shut them up or destroy them, or to destroy the liquors in them. He would have to wait for a judgment of court, and only then, if need were, aid the sheriff in executing it. So likewise he could not proceed upon his own finding to imprison or otherwise punish the defendants for manufacturing or selling intoxicating liquors for a beverage, but must wait until they have been tried and sentenced. Indeed, we know of no way in which the governor could proceed officially against the complainants under the amendment until after judgment against them. If this be so, the complainants show no relation existing between them and him which can ever entitle them to relief against him. And if this be so what need have they of any anticipatory protection ? for whenever they are prosecuted in any suit or proceeding which depends for its maintenance upon the amendment, or whenever they institute any suit or proceeding which is defended under the amendment, they can set up that the amendment has never been adopted and have the point decided, unless the proclamation of adoption is conclusive, and it can be no more conclusive then than now. Courts do not decide questions of law until they arise, or at least are on the verge of arising, and then only between proper parties. But if the suit is not maintainable against the governor, still less is it against the secretary of state ; for the secretary of state as such has no duty in regard to the amendment, unless it be to preserve the record of its adoption, which, if the adoption is a nullity, can do the complainants no harm. This court cannot order him, under any circumstances, either to expunge or destroy it. Nor can we perceive that the suit stands on any better footing against Mr. Colt as attorney general. On the contrary the suit is no longer maintainable against him as attorney general for the further reason that he has ceased to be such. Indeed, if this suit were maintainable, we can see no reason why a similar suit would not be maintainable to test the passage or the constitutionality of a statute in favor of any person having interests which would be injured by it, if it were passed or were constitutional. We do not know of any precedent for such a jurisdiction, nor of any principle of law or equity which would warrant our making any precedent for it.

The bill sets forth that the governor, secretary of state, and attorney general were, by the act under which the proposition of amendment was submitted to the electors, appointed to count the votes ; and it may be that it is supposed that the suit is maintainable against them because of their duties under the appointment. They were, by the act, to count the votes on or before May 1, 1886, and the governor was to announce the result on or before May 15, 1886, and it was provided that, if the amendment was approved by three fifths of the electors voting, it should be declared to be a part of the Constitution of the State. This suit was commenced May 10, 1886, before the governor issued his proclamation ; but on May 15, 1886, the proclamation was issued, and we can undoubtedly take judicial notice of it. It was, in effect, that the proposition of amendment had been approved by three fifths of the electors voting, and that the governor declared it to be a part of the Constitution of the State. This being so, we think the suit is to be treated just as it would have been treated if it had been commenced after, instead of before, the proclamation was made.

Now, under the act, it was the duty of the defendants either simply to count the votes and find the result, or to inquire into the legality of the votes and reject such as they found to be illegal before counting them. If their duty was simply to count and find the result, then unquestionably they have fully performed their duty, and are *functi officiis*. They now owe no duty and hold no relation in regard to the amendment, except as individuals or state officers, and we can have over them as such, for reasons already given, no jurisdiction. If it was their duty to canvass the votes and decide upon their legality, as well as to count them, there is nothing in the bill to show that they have not performed that duty ; and if they have performed it, we cannot compel them to perform it again under our instructions, because, the duty being judicial and committed to them, it was for them to perform it according to their judgments, not according to ours : nor have we, in this form of proceeding, any power to review or revise their decision. If, on the other hand, they did not perform their duty and are still subject to it, notwithstanding the time has elapsed within which they were to perform it, nevertheless, in our opinion,

we have no power, sitting in chancery, to compel them to perform it, and of course no power to take the duty upon ourselves and perform it, either by declaratory decree or in any other manner. This court may, in a proper case, order an officer to proceed to the execution of a judicial duty, but in such a case it exercises its power by writ of *mandamus*, not by mandate in chancery.

The point has been made that the act under which the defendants were appointed is void for unconstitutionality. We do not see how the point can avail the complainants in this suit. Assuming that the court has the same power to adjudge the act to be void in a proper case which it has to adjudge any ordinary act to be void, then, if it be void, the invalidity is patent upon the face of it, and the voting, count, and proclamation were alike nullities, and, in contemplation of law, cannot have done the complainants any injury. We have no jurisdiction in equity to entertain a suit against the defendants merely because they have made a nugatory count of votes, or have issued an ineffectual proclamation.

The complainants cite several cases in support of the jurisdiction. We will review them briefly. They are all Illinois cases. The earliest is *People ex rel. Mitchell* v. *Warfield*, 20 Ill. 159. In that case a writ of *mandamus* was asked for against the county clerk of Sabin County, to compel him to issue a marriage license which the relator had applied to the clerk for at Harrisburg, under the claim that Harrisburg was the county seat, having become such by popular vote, under an act to relocate the county seat, which had been previously at Raleigh. Under the act to relocate, the county clerk was authorized to canvass the vote and certify the result, but not to decide the question of relocation. Under the Illinois Constitution there could be no relocation until it was voted for by a majority of the voters of the county. The certificate of the clerk showed only that the relocation had been voted for by a majority of the voters voting on the question. The respondent set up, among other things, that a bill in equity was pending against him and other county officers, to restrain him and them from maintaining their offices and transacting their official business in Harrisburg, under which they had been enjoined from so doing. The court held that, inasmuch as no other mode was

provided for settling the question of relocation, it was for the courts to settle it, whenever presented in proper form, and that, inasmuch as it had been presented in proper form to a court in equity, which had issued its injunction before the writ of *mandamus* had been applied for, the court would leave it to the equity court for decision. The case is not in point upon the question which we have been considering; for in the Illinois case the court in equity had, or was held to have had, jurisdiction to administer actual relief against the defendant by injunction.

The next case is *Boren* v. *Smith et al.* 47 Ill. 482. This was a bill in equity to prevent the removal of the county seat in Pulaski County from Caledonia to Mound City. It was claimed that the contemplated removal was lawful because a majority of the voters of the county had voted for it. The complainant contended that the election to remove was void because there had been no registry of the voters before the election, and because there had been more fraudulent votes cast for removal than the majority indicated by the poll books. The court decided both points against the complainant, and dismissed the bill. The court, however, asserted its jurisdiction; but in this case, also, the court, if it had decided for the complainant, would have administered relief against the defendants by injunction forbidding the removal. The case of *The People* v. *Wiant*, 48 Ill. 263, is indistinguishable from *People ex rel. Mitchell* v. *Warfield*, and was decided in the same manner. In the case of *Dickey et al.* v. *Reed*, 78 Ill. 261, the court recognized the doctrine laid down in the three cases before cited, but held that it was only applicable to county seat questions.

The Illinois cases are, therefore, not in point; for, we repeat, our difficulty is that we cannot conceive of any relief which we could ever give against the defendants, even if we were to decide the case made by the bill upon every other point of it for the complainants; and when such is the case, as we have seen, the rule is that a court of equity will not entertain the suit for the purpose of making a declaratory decree, one of the essentials of jurisdiction being proper parties. Courts do not decide questions of law in the abstract, but, if we may be permitted the expression, only in the concrete.          *Demurrer sustained.*