STATE OF NEBRASKA, EX REL. SHERMAN SAUNDERS, V. PHIL B. CLARK, AS COUNTY CLERK OF KNOX COUNTY, NEBRASKA.

FILED MARCH 7, 1900. No. 10,891.

1. **Constitutional Prohibition:** DIVISION OF COUNTY: MAJORITY VOTE. Section 2, article 10, of the constitution prohibits the division of a county where the proposition has not received a majority of the legal votes cast thereon.

2. ————: DOES NOT PRECLUDE LEGISLATURE: MAJORITY OF ALL VOTES CAST. The provisions of said section 2, article 10, of the constitution do not preclude the legislature from passing a law requiring that the question of county division shall receive a majority of all votes cast at the election at which the same was submitted to the electors, to effect the erection of a new county out of one then existing.

3. **Statutes:** NOT INIMICAL TO CONSTITUTION. Section 11, article 1, chapter 18, Compiled Statutes, is not inimical to section 2, article 10, of the state constitution.

4. ————: DIVISION OF COUNTY: MAJORITY OF LEGAL VOTES CAST. Under said section 11, article 1, chapter 18, Compiled Statutes,

to effect the division of a county, the proposition therefor must receive a majority of the legal votes cast at the general election, at which the same was submitted, whether cast for the filling of an office or on any proposition.

5. **Determination of Question of Adoption:** TOTAL VOTE PRESUMED TO BE HIGHEST VOTE: PRESUMPTION NOT CONCLUSIVE. In determining the question of whether the county division has been adopted, the total vote cast in the county, at the election at which the same was submitted, will be presumed to be the highest vote cast for any office or on any proposition. But this presumption, if not conclusive, may be overcome by proper evidence.

6. **County Canvassing Board:** ULTRA VIRES. A county canvassing board has no authority to find and declare the total vote polled at an election, and a finding, in that respect made by it, will be rejected as surplusage.

7. **Motion for New Trial:** REVIEW: EXCEPTION NECESSARY. An exception to the overruling of a motion for a new trial is necessary to obtain a review of the question presented by such motion.

ERROR from the district court of Knox county. Tried below before KINKAID, J. *Affirmed.*

*Lambertson & Hall, William F. Norris* and *W. D. Funk,* for the relator, argued that the question for the determination of the court is, whether the alternative writ of mandamus, heretofore granted in this case, be made peremptory. It is admitted that the question of county division was duly submitted, at the general election of 1898, to the electors of Knox county; that at said election 2,807 votes were cast on the question, 1,427 being in favor of and 1,380 against the proposition; that for governor 2,839 votes were cast, being the largest number cast on any proposition or for any candidate, voted for at such election; that the total number of names registered on the poll-books, as having voted, or attempted to vote, at said election was 2,993. From these undisputed facts the relator insists that it is the duty of the respondent to certify the number of votes, the name, boundaries and area of the new county to the secretary of state in compliance with law.

The relator rests his contention upon three propositions: First, that the statute of 1897 relating to counties,. repealing section 2, chapter 26, Session Laws of 1895 (Session Laws, 1897, p. 186, ch. 21), contravenes the constitution of the state and is void; second, that, if said statute be held valid, it must be construed in harmony with the constitution; and, under such construction, a majority vote was cast in favor of county division, and it was carried; third, that, if the statute of 1897 be held valid, as an independent statute, a majority·of the vote cast was in favor of county division.

Counsel for relator cited *Bayard v. Klinge*, 16 Minn., 221; *State v. Babcock*, 17 Nebr., 193; *State v. Lancaster County*, 6 Nebr., 474; *Gillespie v. Palmer*, 20 Wis., 572; *State v. Roper*, 47 Nebr., 417; *Tecumseh Nat. Bank v. Saunders*, 51 Nebr:, 801.

The cause was argued orally, for the relator, by *Frank M. Hall, Esq.*

*Solomon Draper, E. A. Houston, W. L. Henderson* and *W. R. Ellis*, for the respondent, criticised the application of *State v. Babcock, supra*, to the facts in this case; and said relator's counsel was inconsistent in the various uses of *Bayard v. Klinge, supra*, which they had made in their brief. Counsel for respondent also cited and quoted from *State v. Nelson*, 34 Nebr., 162.

The case was argued orally, for the respondent, by *W. L. Henderson* and *W. R. Ellis*.

NORVAL, J.

At the general election held.in November, 1898, there was submitted to the electors of Knox county the proposition to divide said county and erect the county of Dewey. The vote was taken as ordered, and the result was canvassed by the various election boards, who made return thereof to the county clerk of Knox county. The respondent, as county clerk, together with two electors of the county, canvassed the returns, and entered the re-

sult thereof in the proper records. The said canvassers found and certified that there were cast on the question of county division 2,807 votes, of which 1,427 votes were in favor of the affirmative of the proposition, and the negative received 1,380 votes; that 2,839 votes were cast for the several candidates for the office of governor, which was the highest vote cast for any office or on any proposition, and the names of 2,993 persons were entered on the poll-books as having voted at said election. The relator contends that said proposition received the requisite affirmative vote to compel the erection of a new county, and he instituted this action in the court below for a peremptory writ of mandamus to compel the respondent, as county clerk of Knox county, to certify to the secretary of state, in compliance with the provisions of section 11, chapter 18, Compiled Statutes, the name, boundaries and area of the proposed new county. The district court denied the writ, and error proceeding has been prosecuted by the relator.

Section 10, article 1, chapter 18, Compiled Statutes, makes provision for the submission to a vote of the people the proposition to form a new county out of one or more of the existing counties. Section 11 of the same article and chapter provides: "If it shall appear that a majority of all the votes cast at any such election, in the county interested, is in favor of the erection of such new county or counties, the county clerk of said county shall certify the same to the secretary of state, stating in such certificate the name, territorial contents, and boundaries of such new county or counties; whereupon the secretary of state shall notify the governor of the result of the election, whose duty it shall be [to] order an election of county officers for such new county or counties, at such time as he shall designate, and he may, when necessary, fix the place of holding election, notice of which shall be given in such manner as the governor shall direct," etc.

It will be observed that the legislation just quoted

requires for the adoption of the proposition to create a new county out of an existing county that the affirmative of such question shall receive a majority of all the votes cast at the election at which the same was submitted. The respondent insists that the question of erecting a new county out of the county of Knox did not carry by the requisite vote prescribed by statute. The relator, on the other hand, insists, that the writ should issue herein against the respondent, and he bases his contention upon the propositions following:

First. That said section 11, heretofore quoted, is inimical to the provisions of section 2, article 10, of the state constitution, and is therefore void.

Second. Though said section 11 be declared valid, it must be interpreted in harmony with the constitution, and when so construed, the question of county division received the requisite affirmative vote, and was adopted.

Third. That if said section 11 be sustained, then, under the adjudications of this court, the proposition to erect Dewey county was carried.

Should any one of these propositions be determined in favor of the relator, the judgment of the district court must be reversed, and a peremptory writ of mandamus be issued. But if all of them are not well taken, the writ must be denied.

The questions will be taken up in the order in which we have stated them.

The constitutional provision invoked by the relator (sec. 2, art. 10) is in the language following: "No county shall be divided, or have any part stricken therefrom, without first submitting the question to a vote of the people of the county, nor unless a majority of all the legal voters of the county voting on the question shall vote for the same." This section of the fundamental law is a restriction, or limitation, upon the power to divide a county. Such a division can only be made by the submission of the proposition therefor to the electors of the county interested, and not then, unless the ques-

tion shall have received the sanction of a majority of the legal voters of the county voting thereon. This is so plain that argument could subserve no useful purpose of elucidation. If, therefore, the legislature had not spoken on the subject, it is obvious that the proposition to erect a new county out of the county of Knox has been adopted by the required affirmative vote. But by said section 11, article 1, chapter 18, Compiled Statutes, the law-making body has required that the question of county division must receive a majority of all the votes cast at the election, at which the same was submitted, to authorize the erection of a new county. In *State v. Nelson*, 34 Nebr., 162, it was ruled that the provisions of section 2, article 10, of the constitution do not preclude the legislature from requiring a larger vote than a majority of those voting on the question to effect county division.

It is strenuously argued that the constitution has relegated the subject of county division to those voting thereon, and as the framers of the fundamental law have designated a specific and particular class of electors who shall decide the question, the legislature is thereby rendered powerless to leave the decision of the proposition "to the general vote, to all who vote on any proposition whatever, although they fail to vote for or against county division." Doubtless, it is not within the constitutional power of the legislature to enact a law authorizing the division of a county, when the proposition has received an affirmative vote equal to a majority of those voting for governor or any other office or proposition, since the entire vote for candidates for governor or any other office or proposition voted for at the election at which the question of county division is submitted might be less than a majority of the legal voters of the country voting on the question of the erection of a new county, and county division is not permissible where the question has been sanctioned by a less vote than that prescribed by the constitution. By section 11, article 1, chapter 18, Com-

piled Statutes, county division can be had when a major-
ity of all the votes cast at the election at which the ques-
tion of the erection of a new county was submitted to the
electors shall be in favor of the proposition. As the
greater always includes the less, so if the question of
county division receives a majority of all the votes cast
at the election, the same will likewise obtain a majority
of all the votes cast on the proposition. Our conclusion
is that said section 11 is not repugnant to section 2,
article 10, of the constitution.

The second argument of relator is that said section 11,
article 1, chapter 18, Compiled Statutes, must be con-
strued to harmonize with the fundamental law; and that
the words "such election," as employed in said section,
refer to and mean the election on the proposition of
county division and none other. In other words, that the
section of statute under consideration only requires the
vote of a majority of those electors who vote on the ques-
tion of county division to carry the same. Whatever may
be the views of the writer or the other members of this
court as to the proper construction which should be
placed upon the words "such election," in the light of
the past adjudications in this state, the question must
be regarded set at rest, and foreclosed against the re-
lator by *State v. Babcock,* 17 Nebr., 188; *State v. Bechel,*
22 Nebr., 158; *State v. Anderson,* 26 Nebr., 517; *State v.
Benton,* 29 Nebr., 460; *Douglas County v. Keller,* 43 Nebr.,
635; *Stenberg v. State,* 50 Nebr., 130; *Bryan v. City of
Lincoln,* 50 Nebr., 620; *Tecumseh Nat. Bank v. Saunders,* 51
Nebr., 801. Applying the principle of those cases to the
statute with which we have been dealing, there is no
escaping the conclusion that the words "such election"
do not mean merely the vote cast for and against the
proposition of county division, but rather the proposition
to erect a new county must receive the majority of the
legal votes cast at the general election at which the
same was submitted, for the filling of an office and on
any proposition. .

We pass to the consideration of the last contention of relator, that a majority of the votes cast at such election was in favor of the proposition to divide Knox county, and on the question of erecting a new county the greater number of votes was for the affirmative of the proposition, but, as we have already seen, that is not the criterion for determining whether county division carried. To divide the county the proposition must be authorized by a majority of all the votes cast at the election. The county canvassing board found, and so declared and certified, that there were cast in Knox county 2,993 votes at the general election held therein in 1898 when the question of the erection of Dewey county was submitted to the electors, and the county division did not receive a majority of said number. The total number of names of persons registered on the poll-books as voters was 2,993, and the respondent insists that a majority thereof, or 1,497, was necessary to the erection of a new county. We are unable to yield assent to this doctrine. It is a well known fact that at every election blank ballots are cast, ballots are voted which are rejected and not counted for various reasons. See *State v. Roper*, 47 Nebr., 417. Therefore, the names registered on the poll-books do not correctly represent the number of legal votes cast at an election. The names appearing on the poll-books merely indicate that certain persons appeared at the polling places and cast ballots, legal or otherwise, which may or may not have been counted by the judges and clerks of election in the various election precincts. No ballot is counted unless cast for some person or for or against some proposition. Moreover, the county canvassing board had no authority to find and declare the total number of votes cast at the election, and the statement contained in its abstract of votes, "Total vote cast, 2,993," is wholly unofficial, and must be rejected and disregarded, because the board was not required to enter of record the number of votes polled. See *People v. Town of Sausalito*, 39 Pac. Rep. [Cal.], 937.

The abstract of the vote made by the county canvassing board discloses that at the general election held in November, 1898, there were cast in Knox county 2,839 votes for the several candidates for the office of governor which represented the largest vote polled for any office to be filled at, or any question voted on, at said election, and the proposition to divide the county having received more than one-half of the number of votes cast for governor, it is argued by counsel for relator that the question of erecting a new county carried, and the respondent should so certify to the secretary of state. In *State v. Roper*, 47 Nebr., 417, the presumption was indulged that the highest vote cast in the county on any proposition or for any office was the total vote cast at such election, and such vote was taken as the basis of determining whether or not a proposition to relocate the county seat had been carried. The same principle was recognized and applied in *Tecumseh Nat. Bank v. Saunders*, 51 Nebr., 801. See *People v. Wiant*, 48 Ill., 263; *County Seat of Linn County*, 15 Kan., 500; *Enyart v. Trustees*, 25 O. St., 618; *State v. Winkelmeier*, 35 Mo., 103. This presumption doubtless is not a conclusive one, but may be overcome by competent evidence. The abstract of vote made by the county canvassing board discloses that in the several townships of Morton, Hill, Harrison, Peoria and Eastern, in Knox county, there were cast 57 more votes on the proposition to divide the county than were cast in said townships for the office of governor, so that it conclusively appears that the vote on governor in the county was at least 57 less than the total legal votes cast at said election; and these 57 votes must be added to 2,839, the aggregate votes the various candidates for governor received, to ascertain the total vote of the county, and the sum of these two numbers will form the basis for determining whether or not county division carried. It is obvious, therefore, that the proposition to erect a new county received 22 affirmative votes less than a majority of the votes cast at said election and that number less than was essential to adopt the proposition.

Thus far we have considered the case on the merits, which leads to an affirmance of the judgment. But the same result is reached by a shorter course of reasoning. The record before us fails to show that any exception was taken by the relator to the overruling his motion for a new trial filed in the court below. This omission precludes a consideration of the evidence ·to ascertain whether it is sufficient to sustain the findings of the trial court, or the questions raised by the motion for a new trial or petition in error. See *Lowrie v. France*, 7 Nebr., 192; *Murry v. School District*, 11 Nebr., 436; *Burke v. Pepper*, 29 Nebr., 320. The judgment is

AFFIRMED.