THE STATE OF KANSAS, *ex rel. John Foster, County Attorney, &c.,* v. CHARLES E. FAULKNER, *et al.*

1. COUNTY ATTORNEY, *May Bring Actions of Mandamus; Cities.* The county attorney of a county in which a city is situated, may, in the name of the state, maintain an action of mandamus against an officer of such city to compel him to perform a legal duty enjoined upon him as such city officer.

2. CITIES; *Population; Census; Duty of City Authorities, to Effect Change from Third Class, to Second Class.* Where a city of the third class has in fact a population of over 2,000 inhabitants, but such fact has never been legally ascertained by the city authorities, it is the legal duty of such city authorities to immediately and legally ascertain such fact, and then to take the necessary steps to organize as a city of the second class; but until such fact is legally ascertained, the supreme court will not compel the city authorities, by a writ of mandamus, to make out and transmit to the governor of the state a certificate, such as is provided for in section 1 of the act of 1872 relating to cities of the second class, which certificate authorizes the governor to declare by proclamation that such city is governed by the said act relating to cities of the second class.

3. ———— Where the council of a city of the third class having a population of over two thousand inhabitants orders that a census of the city be taken, and then the mayor and council appoint a suitable person to take such census, and the person so appointed commences to take the census, and after doing about two days' work thereon, and taking about 230 names, the mayor and council for the first time pass an ordinance authorizing a census to be taken, which ordinance authorizes the council to order that one or the other of two different kinds of census shall be taken, and also authorizes the mayor and council to appoint a suitable person to take such census, but the council never afterward orders that any census shall be taken, or designates any kind of census to be taken, and the mayor and council never afterward appoint any person to take any census, but the person previously appointed to take a census goes on with the work and completes the census which he had already commenced, and makes a report thereof to the mayor and council showing that the city has a population of two thousand and sixty-nine inhabitants, and the council never approves said report, or ratifies said census, but on the contrary, treats such census as invalid, and refuses to be bound by it, *held,* that technically said census is invalid, that technically the city authorities have never legally ascertained that the city has a population of over two thousand inhabitants; and therefore the supreme court will not, by a writ of mandamus, compel the council to unite with

the mayor in making out and transmitting to the governor the certificate provided for by said section 1 of the act of 1872, relating to cities of the second class.

## Original Proceedings in Mandamus.

ON the 10th of May 1878, an alternative writ of mandamus was issued, directed to *Charles E. Faulkner, Christopher Eberhardt, M. M. Briggs,* and *Theodore F. Garver,* four of the councilmen of the city of Salina, commanding and requiring them, in conjunction with C. S. Radcliff, mayor of said city, and A. W. Wickham, a councilman thereof, and on or before the 20th of said May, to perform certain alleged official duties, or to show cause, etc. The defendants appeared and answered, showing cause. They alleged that the boundaries of the city of Salina, by metes and bounds, had never been legally ascertained, nor had a legal census been taken to ascertain the number of the inhabitants of said city. The case was duly heard, and the subjoined opinion was filed on the 2d of August 1878.

*John Foster,* for plaintiff.

*Garver & Lovitt,* and *A. L. Williams,* for defendants.

The opinion of the court was delivered by

VALENTINE, J.: This is an original action of mandamus, commenced in this court in the name of the state, by John Foster, county attorney of Saline county, to compel Charles E. Faulkner, Christopher Eberhardt, M. M. Briggs, and Theodore F. Garver, members of the city council of the city of Salina in said county, "in conjunction with the mayor of the city of Salina, and in a legal and proper manner, to make out and transmit to the governor of Kansas an accurate description, by metes and bounds, of all the lands included within the limits of the said city of Salina, and the additions thereto, and to do and perform all such other and further necessary acts to complete the organization of said city of Salina as a city of the second class," in accordance with the provisions of section one of the second-class

*Statement of the case.*

city-charter act. (Laws of 1872, page 192, § 1.) Section one of said act provides, among other things as follows:

"Whenever any city shall have hereafter attained a population exceeding two thousand inhabitants, and such fact shall have been duly ascertained and certified by the proper authorities of such city to the governor, he shall declare, by public proclamation, such city subject to the provisions of this act. The mayor and council of such city shall at the time of making the certificate herein provided for, make out and transmit to the governor an accurate description, by metes and bounds, of all the lands included within the limits of such city, and the additions thereto, if any."

The city of Salina is and has been for a long time a city of the third class. Section 15 of the third-class city-charter act provides, among other things, as follows: "The population of the city shall be ascertained, when necessary, by a census taken under an ordinance of the city." (Laws of 1871, page 123, § 15.) The facts of this case, as alleged in the alternative writ, and as admitted or proved by the parties, are substantially as follows:

"On the 7th of January 1878, and prior thereto, said city of Salina was a city of the third class. The mayor and council of said city of Salina, on the 7th of January 1878, ordered that the census of all the inhabitants in said city be taken, and James S. Grier was appointed and confirmed by the mayor and council of said city to take such census. Said Grier was on the 21st of January 1878 commissioned to take such census under said appointment. The mayor and council of said city at the time of making the order to take such census, and the appointing and commissioning said census-taker, believed that it was unnecessary to enact an ordinance under which to take such census.

"The mayor and council of said city, on the 4th of February 1878, enacted an ordinance with reference to the taking of the census of said city. * * * Said ordinance was duly published on the 7th of February 1878. The reappointing of said Grier to take such census, and the recommissioning him as such officer, was by the mayor and council of said city, at their meeting at which the said ordinance was passed, discussed in open session, and was by them deemed unnecessary, and it was then and there agreed and understood by and between the mayor and council of said city and the said

Grier, that he the said Grier should proceed to take such census under and by virtue of the appointment and commission aforesaid, and the said ordinance.

"Said Grier is, and was at the times herein mentioned, a qualified voter of said city, and a suitable person to take said census; and said Grier, on the 8th of February 1878, made and filed with the city clerk of said city his official oath as said official to take such census.

"Said Grier as said officer, on the 25th of February 1878, duly reported under oath, and in writing to the mayor and council of said city, at a meeting of the city council then and there duly held, that there then were 2,069 inhabitants residing in the corporate limits of said city, and in said report stated and set forth the names of said inhabitants, and under oath stated that the said report and the names therein were correct.

"Said report was by the mayor and council of said city received, and it was then and there ordered by the mayor and council of said city, 'that a committee of three be appointed to report the boundaries of the city, and take the necessary steps to change the city organization from a third to a second-class city.' Under said order a committee of three was appointed at said meeting. A majority of said committee made their report to the mayor and council of said city at a meeting duly held on the 7th of March 1878; a majority of said council then and there refused to receive said report.

"Said report contained an accurate description, by metes and bounds, of all the lands included within the limits of the said city of Salina, and the additions thereto. Said description was correctly copied into the minutes of the mayor and council of said meeting. * * *

"The mayor and city clerk of said city, on the 25th of April 1878, certified to the governor of Kansas the foregoing facts and proceedings, together with the records of the mayor and council of the same. Said paper being transmitted to the said governor, he refused to proclaim said city a city of the second class, for the reasons stated in his letter to C. S. Radcliff, mayor. * * *

"C. S. Radcliff is now mayor of said city of Salina, and A. W. Wickham is a councilman of the city of Salina. Said mayor desires, and has offered to defendants to certify, to the governor of the state of Kansas that said city has attained a population exceeding two thousand inhabitants. Said mayor,

and said Wickham, councilman of said city, are willing and desire to make out and transmit to the governor of the state of Kansas an accurate description by metes and bounds of all the land included within the limits of said city, and the additions thereto. Said mayor before the commencement of this action requested the council of said city, in conjunction with himself, to make out and transmit to the governor of Kansas an accurate description by metes and bounds of all lands included within the limits of said city, and the additions thereto. The defendants before the commencement of this action refused, and do refuse, to make out and transmit to the governor of Kansas an accurate description by metes and bounds of all the lands included within the limits of said city, and the additions thereto, either in conjunction with said mayor, or by themselves."

The city ordinance mentioned in the above statement of facts, so far as it is necessary to quote it, reads as follows:

"SEC. 1. The city council of the city of Salina, shall, as often as they shall think necessary, order a census of the city to be taken of all persons residing therein, or of all persons of the age of twenty-one years and upwards, as the city council may require.

"SEC. 2. When a census shall be ordered to be taken as provided in section 1 of this ordinance, the mayor, by and with the consent of the city council, shall appoint and commission a suitable person to take the same," etc.

James S. Grier had done about two days' work toward taking the census, and had taken about 230 names of the inhabitants of Salina, when this ordinance was passed. After said ordinance was passed, and after he filed his said oath of office, he finished taking such census. He did not again go through the city where he had previously gone and retake the census of said 230 inhabitants, but he merely transferred their names, from the slips of paper on which he had previously taken them in pencil, to the said report which he made and filed with the mayor and council. The city of Salina has in fact a population of over two thousand inhabitants, and the defendants so believe, but they do not believe such fact has ever been legally ascertained. Upon the foregoing facts the defendants raised the following questions:

1st.–The defendants claim: That the county attorney of a county in which a city is situated, cannot under any circumstances maintain an action of mandamus against the officers of such city to compel them to perform a legal duty enjoined upon them merely as such city officers.

2d.–The defendants claim that, although a city of the third class may have a population of over two thousand inhabitants, still, that no steps can be taken toward transforming such city into a city of the second class until that fact has first been duly and legally ascertained by the city authorities. They claim that such fact can be duly and legally ascertained only by taking a legal and valid census of the population, and that such a census can be taken only under the provisions of an ordinance of the city, previously passed, authorizing such a census to be taken. They claim that none of these things have been done in the present case, and therefore they claim that they are not now legally bound to perform any of the acts demanded of them by the plaintiff. They claim that the census actually taken in the present case is illegal, and invalid, for the following reasons: *First*, No ordinance was in force authorizing a census to be taken when Grier, the census-taker, was appointed to take said census. *Second*, A portion of the census actually taken and reported to the mayor and council by him, was taken before any ordinance was passed authorizing a census to be taken. *Third*, The ordinance which was afterward actually passed did not authorize the present census to be taken, nor any census, but merely authorized the city council *to afterward order* that a census should be taken, which *order* the council has never yet legally made. *Fourth*, Said ordinance did not authorize any particular census to be ordered to be taken, but simply authorized the council to afterward order that one or the other of two different kinds of census should be taken, and the council has never yet legally designated which one of said two different kinds of census should be taken. *Fifth*, Said ordinance did not appoint Grier, or any one else, to take a census, but simply provided that when a census should be ordered to be taken the mayor and council might then, (that is, after the passage of the ordinance, and after the order to take the census had been made,) appoint some suitable person to take it; and no person has ever yet been legally appointed under said ordinance (or otherwise) to take said census. And the defendants further claim, that said census taken by Grier has never been ratified or held good by the city authorities, but that on the

contrary they have always held it irregular, invalid, and void, and have always refused to be bound by it.

I. We think the county attorney is a proper officer to prosecute this kind of action. He should certainly have the power to compel, by a proper action, all officers of his county to perform the duties of their respective

1. County attorney may bring man- damus.

offices, whether such officers are county, city, township, school-district, or road-district officers. He is the legal representative of the state for the prosecution of actions for the whole of his county, including all cities therein; and he should faithfully represent the interests of the state for the whole of his county, and each municipality thereof.

II. From the evidence in this case we should think that the city of Salina has a population of two thousand inhabitants, and the defendants themselves so think, although there is evidently room for a difference of opinion.

2. Cities; change from third, to second class.

And assuming that it has a population of over two thousand inhabitants, it then becomes the *immediate duty* of the city authorities to legally ascertain that fact, and then to take the necessary steps to organize the city as a city of the second class; and they cannot shirk the responsibility of performing this duty. They have each taken an oath to perform the duties of their respective offices, and nothing can excuse a voluntary failure to perform such duties. Their only excuse for failing to perform the acts demanded of them by the plaintiff in this case is, that it has never yet been legally ascertained that the city of Salina has a population of over two thousand inhabitants. Now if it has not, then it is their legal duty to so ascertain that fact. We are inclined to think that said fact has really never been legally ascertained. Grier really never had any legal authority to take said census, and hence the census itself, although ever so correct, cannot be binding upon the city authorities unless they are willing to ratify it and make it binding. This they have never done. Possibly they could not do it, but we are inclined to think they could. The census taken by Grier is

void merely for technical irregularities, and hence we would think that the city authorities might ratify it and make it binding upon the city. But being void for irregularities, although the irregularities are merely technical, we do not think that the city authorities are required to treat it as valid, unless they are willing to do so. It is not claimed that the city authorities have ascertained in any other legal manner that the city has a population of over two thousand. And hence, as it has never been ascertained by the city authorities in any legal manner that the city of Salina has a population of over two thousand inhabitants, we cannot award the peremptory writ of mandamus to compel the defendants as councilmen of said city to perform the acts prayed for.

Judgment will therefore be entered for the defendants.

All the Justices concurring.