STATE *ex rel,* ATTORNEY GENERAL v. HUSTON, *Judge.*

No. 1826.    Opinion Filed July 27, 1910.

Rehearing Denied November 22, 1910.

1.    OFFICERS—County Attorneys—Authority to Bring Suit Against State Officers—Misapplication of Public Funds. The county attorney may bring an action properly triable in the district court of his county in the name of the state to enjoin state officers other than the Governor from misapplying public funds or applying them to a use or for a purpose or at a place prohibited by the Constitution or by law.

a.    INJUNCTION—Removal of State Offices—Misapplication of Funds. Injunction will lie at the suit of the state brought by the county attorney as an executive law officer to enjoin the executive officers of the state other than the Governor from removing their offices, public ˙records, books and papers from the seat of government and expending the funds of the state for such purpose.

2.    OFFICERS—Governor—Jurisdiction to Control Acts. The district' courts of this state have no jurisdiction to control the action of the Governor even in ministerial acts.

3.    OFFICERS—Inferior State Officers—Control by Courts—Injunction—Removal of Offices—Misapplication of Funds—Prohibition. The district court of Logan county has the power to enjoin said officers, other than the Governor, from using or applying public funds contrary to law or at a place unauthorized by law.

a.    It has authority to enjoin such state officers nòt only from misapplying or disbursing such funds illegally, but also in connection therewith to restrain them from removing their offices and public records, books and papers from the seat of government.

b.    The pleadings in the action in the district court of Logan county, which relators seek by this proceeding in prohibition to arrest, alleging that the seat of government is at Guthrie and that, unless enjoined. such state officers will remove their offices, records. etc., to Oklahoma City, which is not the seat of government, contrary to art. 6, sec. 1. of the Constitution, and will disburse unlawfully public funds in making such removal. raise a question for determination that is within the jurisdiction of said court.

c.    Such court having jurisdiction of the person of all parties, other than the Governor, and of the subject-matter, its action thereon can be reviewed by this court only by a proceeding in error.

d. The writ of prohibition may not be used for the purpose of a proceeding in error, so as to review the action of the lower court, when such court has jurisdiction of the subject-matter and of the parties, so as to correct an error of such trial court.

e. The duty of the officers of the executive department of this state to keep their offices at the seat of government is mandatory, and involves no question of discretion.

f. The determination of where the seat of government is. is a judicial question.

(Syllabus by the Court.)

*Original Action In Prohibition.*

Action by the State *ex rel.* Attorney General against A. H. Huston, District Judge, and others. Petition granted in part and denied in part.

*Charles West* and *B. F. Burwell,* for relator.

*Dale, Bierer & Hegler, Burford & Burford* and *C. G. Hornor,* for respondents.

Copies of briefs did not reach the reporter.

WILLIAMS, J. The following questions are essential to be determined:

(1) Has the county attorney of Logan county authority to prosecute this action in the district court of Logan county in the name of the state?

(2) Has the district court jurisdiction over the person of the Governor, Secretary of State, State Auditor, Attorney General, State Treasurer, Chief Mine Inspector, Commissioner of Labor, Commissioner of Charities and Corrections, State Superintendent of Public Instruction, State Examiner and Inspector, State Insurance Commissioner, Corporation Commissioners, and members of the State Board of Public Affairs?

(3) Does the amended petition filed in the lower court, under any reasonable theory, state an action over which said court has jurisdiction?

1. In the *Board of Education of the Territory of Oklahoma et al. v. Territory of Oklahoma ex rel. Taylor, Co. Atty.,* 12 Okla. 286, it is said:

"This action was commenced in the district court of Oklahoma county by W. R. Taylor, as county attorney of Oklahoma county, against the members of the board of education of the territory of Oklahoma, for the purpose of enjoining the members of said board, as such board, from expending any of the public funds of said territory in the construction of a normal school building at the city of Granite, in Greer county, in said territory. One of the members of the board was a resident of Oklahoma county, and the place of meeting of said board was at Edmond, in said county. The members of the board appeared by the Attorney General of the territory, and objected to the jurisdiction of the court, to the authority of the county attorney of Oklahoma county to maintain the action, and to the power to sue the members of the board. These objections being overruled, issues were formed by answer and reply. * * *

"The statutes of Kansas relating to the duties of county attorney and Attorney General, are almost identical with ours, and the Supreme Court of that state has held in a number of cases that the county attorney is the proper officer to prosecute actions of this character. (*Craft v. Jackson,* 5, Kan. 518; *Bobbett v. State,* 10 Kan. 9; *Bartlett v. State,* 13 Kan. 99; *State v. Faulkner,* 20 Kan. 541; *State v. Marion Co.,* 21 Kan. 420; *Hornaday v. State,* 62 Pac. Rep. 329.)

"We think these authorities applicable to a correct interpretation of our statutes, and that the county attorney of Oklahoma county had the authority to bring and prosecute this action, and this without making the allegations in the petition that the Attorney General and Governor were advising the proceedings which were sought to be remedied by the suit."

In *State v. County of Marion,* 21 Kan. 419 (2nd Ed., p. 308), the court, speaking through Chief Justice Horton, with whom concurred Justices Brewer and Valentine, said:

"Before proceeding to the principal inquiry involved in this action, we will dispose of the preliminary objections presented on the part of the defendants to our consideration of the merits of the cause. These are—First, that the state is not the party in interest, and hence that the suit cannot be maintained in its name; and, second, if the suit can be maintained in the name of the state, it cannot be done on the relation of the county attorney. Neither of these objections is tenable. The suit is being

prosecuted by the proper officer, and in the name of the proper party plaintiff; and in justification of this conclusion we need only refer to the prior decisions of this court. *Craft v. Jackson Co.*, 5 Kan. 518; *Bobbett v. State*, 10 Kan. 9; *Bartlett v. State*, 13 Kan. 99; *State v. Faulkner*, 20 Kan. 541."

In *Hornaday et al. v. State*, 62 Kan. 822, in a unanimous opinion, the court being composed of Doster, Chief Justice, Johnson and Smith, Associate Justices, it is said:

"This was a suit brought by the state of Kansas, on the relation of the county attorney of Clay county, against the board of trustees of the asylums for the insane, to enjoin the latter from accepting, on behalf of the state of Kansas, deeds conveying to the state certain lands near the city of Parsons, for the purpose of erecting an asylum for the insane thereon, and from certifying to the State Auditor any vouchers on which warrants might be issued on the State Treasurer to pay the owners of said real estate the price of the same; and, further, to restrain said trustees from making any contract in the name or on behalf of the state of Kansas for the construction of buildings to be used as an insane asylum at or near the city of Parsons. Judgment was entered on the pleadings in the district court in favor of the state, and a perpetual injunction decreed in accordance with the prayer of the petition."

On page 831 (62 Kan.) it is said:

"The power of a county attorney to institute this action in the court below is denied by plaintiffs in error. The statute defining the duties of that officer is quite comprehensive. (Gen. Stat. 1899, sec. 1714; Gen. Stat. 1897, ch. 89, sec. 2). It is his duty to prosecute or defend, on behalf of the state, all suits, applications, or motions, civil or criminal, arising under the laws of the state, in which the state or his county is a party or interested. In this case jurisdiction was obtained over the persons constituting the board of trustees of the asylums for the insane in Clay county, and the cause then being triable in that forum, the county attorney was authorized to prosecute it."

In *State ex rel. Roberts, Co. Att'y. v. Lawrence, Co. Treas.*, 80 Kan., 707, it is said:

"The state may maintain injunction against a public officer to restrain him from a violation of his official duty, although other

remedies may be open, and he may have given a sufficient bond. It has an interest in seeing that the will of the Legislature is not disregarded, and need not, as an individual plaintiff must, show grounds of fearing more specific injury."

In *State ex rel. Haskell, Governor, v. Huston, Judge, et al.*, 21 Okla. 782, it is said:

"However, in our judgment, the county attorney of any county, where proper service may be had in such county, has the right to institute such an action in the name of the state, on his relation, as was begun in the Logan county district court in the name of the state, on the relation of the Attorney General, to have the charter of the Prairie Oil & Gas Company canceled, which action on the part of such county attorney would neither be subject to the control of the Governor, nor to be dismissed at his discretion. The statutes heretofore referred to appear to make the Attorney General the legal adviser of the state officers, and the proper person to prosecute and defend actions in the Supreme Court in which the state is a party or interested, and, when directed by the Governor or either branch of the Legislature, to appear and prosecute or defend any action, civil or criminal, in any court, or before any officer, in which the state is a party or interested, and that it is the duty of the county attorney, except as otherwise provided, to prosecute and defend all actions, both civil and criminal, in the district or county courts, in which the state is a party or interested."

Nor may the Attorney General, when directed by the Governor "to appear and *prosecute* or *defend*" any action, dismiss such action independent of the county attorney. *State v. Ehrlick*, 65 W. Va. 700; *State v. Hornaday et al.*, 62 Kan. 334.

It follows by the settled adjudications, not only of the Supreme Courts of the territory and state of Oklahoma, but also of the state of Kansas prior to and subsequent to the time of the adoption of the Code of Civil Procedure from that state, that a proper county attorney may institute and maintain such an action in the name of the state.

2. That courts of competent jurisdiction may control purely ministerial acts of the Secretary of State and state officers, other than the Governor, has been settled by the great weight of

current state authority.    26 Cyc. 231, 245.    The adjudications of this court accord with that rule.    *Norris et al. v. Cross*, 25 Okla. 287, 105 Pac. 1000; *Threadgill et al. v. Cross,* 26 Okla. 403.

The question arises, May such courts control the action of the Governor, even in a ministerial act?

In *People ex rel. Sutherland v. Governor*, 29 Mich. 320, 18 Am. Rep. 89, speaking through the late Chief Justice Cooley, the court said:

"But when duties are imposed upon the Governor, whatever be their grade, importance or nature, we doubt the right of the courts to say that this or that duty might properly have been imposed upon a Secretary of State, or a sheriff of a county or other inferior officer, and that, inasmuch as in case it had been so imposed, there would have been a judicial remedy for neglect to perform it, therefore there must be the like remedy when the Governor himself is guilty of a similar neglect.    The apportionment of power, authority and duty to the Governor, is either made by the people in the Constitution, or by the Legislature in making laws under it; and the courts, when the apportionment has been made, would be presumptuous if they should assume to declare that a particular duty assigned to the Governor is not essentially executive, but is of such inferior grade and importance as properly to pertain to some inferior office, and consequently for the purposes of their jurisdiction, the courts may treat it precisely as if an inferior officer had been required to perform it.    To do this would be not only to question the wisdom of the Constitution or the law, but also to assert a right to make the Governor the passive instrument of the judiciary in executing its mandates within the sphere of his own duties.    Were the courts to go so far, they would break from those checks and balances of government which were meant to be checks of co-operation, and not of antagonism or mastery, and would concentrate in their own hands something at least of the power which the people, either directly or by the action of their representatives, decided to intrust to the other departments of the government."

The current weight of state authority appears to clearly sustain the rule that state courts may not control the Governor of a state even in the exercise of a ministerial act.    *Hawkins v. The Governor,* 1 Ark. 570, 33 Am. Dec. 346; *Taylor v. The Gov-*

*ernor,* 1 Ark. 21; *State ex rel. Bisbee v. Drew,* 17 Fla. 67; *State ex rel. Low v. Towns,* 8 Ga. 360; *People ex rel. Billings v. Bissell,* 19 Ill. 229, 68 Am. Dec. 591; *People ex rel. Harless v. Hatch,* 33 Ill. 9; *People ex rel. Harless v. Yates,* 40 Ill. 126; *People ex rel. Stickney v. Palmer,* 64 Ill. 41; *People ex rel. Bacon v. Cullom,* 100 Ill. 472; *Hovey v. State,* 127 Ind. 588, 11 L. R. A. 763, 22 Am. St. Rep. 663; *State v. Kirkwood,* 14 Ia. 162; *State ex rel. Oliver v. Warmoth,* 22 La. Ann. 1, 2 Am. Rep. 712; *State ex rel. Mississippi Valley Nav. Co. v. Warmoth,* 24 La. Ann. 351, 13 Am. Rep. 126; *State ex rel. Hope v. Board of Liquidation,* 43 La. Ann. 647, 7 So. 706, 8 So. 577; *State ex rel. McEnery v. Nicholls,* 42 La. Ann. 209; *In Re Dennett,* 32 Me. 508, 54 Am. Dec. 602; *Rice v. Austin,* 19 Minn. 103, 18 Am. Rep. 330, Gil. 74; *Vicksburg & M. R. Co. v. Lowry,* 61 Miss. 102, 48 Am. Rep. 76; *State ex rel. Robb v. Stone,* 120 Mo. 428, 23 L. R. A. 194, 41 Am. St. Rep. 705; *State, Gledhill, Prosecutor, v. The Governor,* 25 N. J. L. 331; *People ex rel. Broderick v. Horton,* 156 N. Y. 136, 41 L. R. A. 231, 66 Am. St. Rep. 547; *State v. Ansel,* 76 S. C. 395, 11 Am. & Eng. Ann. Cas. 613; *Jonesboro, F. B. & B. Gap Turnp. Co. v. Brown,* 8 Baxt. 490, 35 Am. Rep. 713; *State ex rel. Stewart v. Marks,* 6 Lea. 12; *Bates v. Taylor,* 87 Tenn. 319, 3 L. R. A. 316; *State ex rel. Latture v. Board of Inspectors,* 114 Tenn. 516; *Insane Asylum v. Wolfly,* 3 Ariz. 132, 8 L. R. A. 188; *Hartranft's Appeal,* 85 Pa. 433, 27 Am. Rep. 667; *Mauran v. Smith,* 8 R. I. 193, 5 Am. Rep. 564; *Goff v. Wilson,* 32 W. Va. 393, 3 L. R. A. 58; *Woods v. Sheldon,* 9 S. D. 392.

Alabama, California, Colorado, Kansas, Kentucky, Maryland, Montana, Nebraska, Nevada, North Carolina and Ohio hold that the Governor, in ministerial acts, may be controlled by the courts. In Georgia, Indiana and Missouri the early cases tended that way, but the later cases are clearly the other way. In Minnesota, in the early cases, the courts assumed the power without passing on the question, but later expressly departed therefrom.

*State ex rel. Irvine v. Brooks, Governor,* 14 Wyo. 393, 6

L. R. A. (N. S.) 750, wherein the writ was awarded against the Governor, is based upon section 3, art. 5, Const. 1889 of that state, which provides that "the Supreme Court shall have original jurisdiction in *quo warranto* and mandamus as to all state officers." So it supports neither line of the conflicting authorities.

*Marbury v. Madison*, 1 Cranch, 137, and subsequent adjudications by the Supreme Court of the United States, wherein ministerial acts of members of the President's Cabinet have been held to be controllable by the process of courts of competent jurisdiction, have been called to our attention. Also the cases of *Davis v. Gray,* 16 Wall. 203, 21 L. Ed. 447; *Board of Liquidation v. McComb,* 92 U. S. 531, 23 L. Ed. 623, and *Ralston v. Missouri Fund Com'rs.,* 120 U. S. 391, 30 L. Ed. 721, wherein it was held that the jurisdiction of the federal courts might be invoked to restrain the Governor of a state from doing a wrongful act to the injury of individual rights. But nowhere in said cases is it intimated that the state courts have any such jurisdiction.

Also, in *Bates v. Taylor, supra,* it is said:

"A state's judiciary sustains the same relation to its Governor that the federal judiciary does to the President of the United States, and as a state court, by reason of that relation, has no jurisdiction to coerce or restrain the Governor with respect to his official duties, so the federal courts, for the same reason, have no power to interfere with the official actions of the President. It was so held in the case of the *State of Mississippi v Johnson,* 4 Wallace, 499."

The opinion in this case was by Caldwell, J., concurred in by Turney, Ch. J., Lurton, Snodgrass and Folks, Associate Justices.

In several cases adjudicated by this court, the Governor has been a party thereto, but the question of jurisdiction of the courts of this state as to him was not passed upon. *City of Pond Creek et al. v. Haskell, Governor, et al.,* 21 Okla. 711; *Noble State Bank v. Haskell et al.,* 22 Okla. 48; *Thompson et al. v. Haskell,* 24 Okla. 70, 102 Pac. 700; *Betts v. Com'rs of the State Land Office,* 27 Okla. 64.

In *Haskell, Governor, v. Reigel et al.,* 26 Okla. 87, 108 Pac. 367, the question of jurisdiction as to the Governor was raised, and this court said:

"In this case no opinion is expressed as to whether the defendants in error could maintain this action or as to the district court of Logan county having jurisdiction to render a judgment awarding a writ of mandamus against the plaintiff in error, the Governor, supervising or controlling in any way his action in matters involving ministerial action."

In this action the question of jurisdiction is squarely raised by the counsel for the Governor, and we conclude that the courts of this state may not control the actions of the Chief Executive of the state. But, in so holding, it does not follow that the Governor of a state is above the law. He and his acts are as much subject to the law as the humblest citizen of the commonwealth. But a tribunal other than the courts must be resorted to for a correction of his official wrongs, if any, to. wit, the Legislature. So far as his official acts may be contrary to law, and therefore void, that question may be raised by private parties before the courts in determination as to private rights when the Governor is not a necessary party.

3.   Having reached the conclusion that the district court of Logan county has not jurisdiction over the Governor, but over the other state officers in the state as to their ministerial acts, the question further arises as to whether said petition, under any theory, states a cause of action over which said court has jurisdiction.

The second amended petition contains the following paragraph:

"Plaintiff avers that the defendants are threatening to and will, unless enjoined by the order of this court, remove their several offices from the city of Guthrie to Oklahoma City, in said state, and will there establish their said offices and attempt to do and perform their official acts at the city of Oklahoma City, and away from the city of Guthrie; that it will cost a large sum of money to move said offices from Guthrie to Oklahoma City, to wit, the sum of $10,000.00 or more, and plaintiff alleges that

the defendants are intending to and will, unless enjoined by the court, expend said sum of money for said purpose out of the public funds and money of the state, in violation of law."

In the *Board of Education of the Territory of Oklahoma et al. v. Territory of Oklahoma ex rel. Taylor, County Attorney of Oklahoma County,* 12 Okla. 286, the court said:

"The purpose of the action is to prevent the members of the board of education from doing unauthorized acts; from improperly expending the public funds for unauthorized purposes; to prevent them from entering into an unauthorized contract. It is a well settled doctrine that courts of equity have power to enjoin ministerial acts of public officers which are *ultra vires,* and beyond the scope of their authority. (*Noble v. Union River Logging R. Co.,* 147 U. S. 164; *Osborn et al. v. The President and Officers of Bank of the United States,* 9 Wheat. 739; *Wilson v. Lambert,* 168 U. S. 612; *Leader Printing Co. v. Lowry,* 9 Okla. 89; *State v. Metschan,* 46 Pac. Rep. 791; *State v. Elliott,* 11 Ind. 211.)

"The expenditure of public money at a place or for a purpose not authorized by law is a misapplication of the public funds, and a sufficient injury to enable the territory, through one of its officers authorized to represent it, to call upon a court of equity for relief. (*State v. Metschan,* 46 Pac. Rep. 791.)

"While courts of equity will not, in an action for injunction, try the title to a public office, nor attempt to control the action of executive officers in the appointment or removal of officers, yet where an inquiry into the legality of such acts is an incident necessary to the determination of a question rightfully within the power of the court, such incidental question may be inquired into sufficiently to enable the court to rightfully determine the question properly before it. Hence, while in this cause the court will not attempt to determine which of the two committees appointed to select the site and locate the Southwestern Normal School was entitled to the position or its emoluments, nor whether the Governor acted properly or improperly in appointing a second committee, nor into his motives for such action, yet, for the purpose of determining whether the board of education is acting within the scope of its powers and authority, we may and will inquire into the acts and authority upon which the validity of the actions of the board of education must necessarily depend."

In *State ex rel. Reed, Co. Atty., v. Commissioners of Marion Co. and Others, supra,* it was held:

"Where a board of county commissioners have made an order for the erection of permanent county buildings, have adopted plans and specifications, have directed the county clerk to advertise for bids for said work, and are about to enter into contracts therefor on behalf of the county, and the necessary prerequisites prescribed by the statute to incur obligations for the erection of this class of buildings have not been complied with, *held,* that such acts are illegal and unauthorized, and are proper subjects of the preventive jurisdiction of equity when its exercise is invoked by suitable authority."

In *State ex rel. McCain v. Metschau,* 32 Or. 372, 41 L. R. A. 692, it is said:

"But this is a suit by the state in its sovereign capacity as the guardian of the rights of the people, instituted by its executive law officer, and can, in our opinion, be maintained without showing any special injury to the state. It is enough that the public funds are about to be applied in a manner prohibited by the Constitution. At common law the Attorney General of England could, by information in the name of the Crown, call upon the courts of justice to prevent the misapplication of funds or property raised or held for public use, and, in the absence of statutory regulations, the district attorney in this state is vested with like powers. *State v. Douglas County Road Co.,* 10 Or. 198; *Dollar Sav. Bank v. United States,* 19 Wall. 239, 22 L. Ed. 82. Indeed, the right of the state, through its proper officer, to maintain such a proceeding, would seem to be one of the necessary incidents of sovereignty. Without it the rights of the citizen cannot be protected or enforced in cases where he is unable to act for himself. In a suit by an individual he is required to show some special injury to himself; and when, as in this case, the wrong complained of is public in its character, affecting no one citizen more than another, it is impossible for him to do so, and for that reason he is without remedy, although he may be injured in common with the other members of the community. In such cases the state has a right, by virtue of its high prerogative power, to call upon the courts, through its proper law officer, to protect the rights of its people. And to support a proceeding for that purpose it is sufficient that the grievance complained of is a threatened invasion of the right of the people to determine what

disposition shall be made of the public funds exacted from them by the extraordinary power of taxation. Now, every use of such funds in violation of the provisions of the Constitution or organic law must necessarily be of this character. The Legislature is but an instrumentality appointed by the state to exercise a part of its sovereign powers. In that capacity it holds the public funds in trust for the people. Except as limited by the Constitution, its action within its legitimate sphere is the action of the people; but, when it undertakes to apply such funds in a manner or at a place prohibited by the organic law, it is not only exercising a power expressly withheld, but violating its trust, and a court of equity will interfere at the suit of the sovereign power to prevent or restrain such an application without being required to show any other injury. It is enough that the threatened disposition is in violation of the will of the people, as expressed in the supreme law of the land  *  *  *  The expenditure of public money at a place prohibited by the Constitution is a misapplication thereof, for the simple and very satisfactory reason that it is against the declared will of the people; and the location of a public institution, within the meaning of that term as used in the Constitution, is not in any sense a legislative question, but has been determined by the people themselves. A sufficient injury, therefore, to enable the state in its sovereign capacity to call upon a court of equity for relief is shown whenever it is made to appear that public funds are about to be applied to a use, for a purpose, or at a place prohibited by the Constitution. We conclude, therefore, that the court has jurisdiction, and the only remaining question is whether the act of the Legislature authorizing the construction of an insane asylum in Eastern Oregon is in violation of the provisions of the Constitution."

See, also, *State ex rel. Taylor v. Lord*, 28 Or. 498, 31 L. R. A. (O. S.) 473; *State ex rel. v. Lawrence, supra; Hornaday el al. v. State ex rel., supra; Russell et al. v. Tate et al.*, 52 Ark. 541, 7 L. R. A. (O. S.) 180.

In *Fletcher v. Tuttle*, 151 Ill. 57, it is said:

"*  *  *  Wherever the established distinctions between equitable and common law jurisdiction are observed,  *  *  *  courts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political, and where no civil or property right is involved."

Only three kinds of actions may be had in this jurisdiction, to wit, (1) civil action, (2) criminal action, (3) special proceeding, the distinction between chancery and law jurisdictions never having obtained in this state.

In *State ex rel. Haskell, Governor, v. Huston, Judge, et al., supra,* it is said:

"The writ of *quo warranto* being abolished, and remedies heretofore obtainable in those forms being now made obtainable by a civil action, the action stands on the same footing in the courts as any other, and is commenced and prosecuted in the same way, and no exception to the law as laid down in section 6567 is thereby created."

In *Newhouse v. Alexander*, 27 Okla. 46, in an opinion delivered by Mr. Justice Turner, it is said:

"It is first contended by Newhouse that the court was without jurisdiction to try this cause for the reason that the writ of *quo warranto* and proceedings by information in the nature of *quo warranto* abolished by Wilson's Rev. & Ann. Stat. of Okla., sec. 4848, revived, by secs. 2 and 10 of art. 7 of the Constitution, the ancient writ of *quo warranto*, which makes it the sole remedy of Alexander in this cause. If such is the effect of said provisions when construed together, then Alexander is without remedy, for the reason that the functions of the ancient writ were limited to matters *publici juris* and the same was not available for the trial of purely private rights. 23 Am. & Eng. Enc. of Law, 598. There is no conflict in said provisions and nothing in this contention. We take it that the Constitutional Convention, by providing in art. 7, sec. 2, of the Constitution that the Supreme Court, and in sec. 10 of the same article that the district courts shall have power to issue writs of *quo warranto,* looked rather to the substance than to the form and simply meant not so much to give those courts power to issue a writ of a prescribed form, but to solemnly fix the ancient remedies secured by that writ and leave it to the Legislature to prescribe any new process or procedure to invoke those remedies in the courts and to amplify and extend the remedies theretofore obtainable in the form of the ancient writ. This was done by Wilson's Rev. & Ann. Stat. of Okla., art. 29, under the head of 'Procedure Civil,' which in effect provides that the remedies theretofore obtainable in that form might be had by civil action and extends the remedy so as to per-

mit a private person to contest with another private person the right or title to a public office."

See, also, *Russell et al. v. Tate et al., supra; Price v. State Bank*, 14 Ark. 50; *DeRoberts v. Town of Cross*, 23 Okla. 888.

It is clear that an action in the name of the state in its sovereign capacity may be brought by a county attorney in the district court of his county, he being the executive law officer in said county and court, to enjoin inferior state officers from expending public funds contrary to law, without showing any special injury to the state. The district court, therefore, has jurisdiction over all the parties defendant in said action, except the Governor, to restrain them from expending public funds. The question further arises, Has it jurisdiction to restrain them from removing their offices, papers, seals, files, archives, furniture, pictures and paraphernalia of their said offices, respectively, from Guthrie to Oklahoma City, and from withdrawing any money from the treasury of the state for use in moving any of the said offices, or in locating, establishing or attempting to establish the seat of government at Oklahoma City, and also from incurring any indebtedness for any of said purposes? The matters here to be dealt with are *publici juris,* and the acts of public officers in the expending public funds, matters affecting the whole people, or the state at large. *State ex rel. v. Lord, supra.*

In *Rickey et al. v. Williams et al.,* 8 Wash. 479, it is said:

"In either event, the action of the board in submitting the question of the removal of the county seat from Colville to Kettle Falls was absolutely unauthorized, and the election held in pursuance thereof was necessarily invalid for that reason, and the question is presented as to whether, under such a state of facts, an injunction will lie to prevent a threatened removal of the county seat in pursuance of such void election.

"It is contended first by appellants that such an action will not lie at the suit of a taxpayer, as the question of the removal of a county seat is a political question, in which no person has any property right, and many authorities are presented in relation thereto. A number of states have held that a suit to enjoin the removal of a county seat will not lie at the instance of a tax-

payer.  In *Attorney General v. Supervisors,* 33 Mich. 289; it is held that the removal of a county seat is a purely political question, and does not in any way legally involve the rights of private parties.  There was no question of increased expenses or the expenditure of public moneys involved in that case.  Other cases have been cited to the same effect, but we deem it unnecessary to discuss them.

"Considered in the abstract, it must be admitted that such question is a political question, but when it appears that such changed location involves the expenditure of a large sum of public money, which would otherwise be unnecessary, no good reason is apparent why the removal thereof may not be enjoined in case the election was void.  Numerous instances have been presented where the right of a taxpayer to enjoin the illegal expenditure of public moneys and the unlawful levying of a tax has been sustained, and there is no good reason why such a writ will not lie in all such cases, regardless of the use to which the money is to be devoted, and although the validity of an election to determine the relocation of a county seat is involved."

This case was followed and approved in *Krieschel v. County Commissioners,* 12 Wash. 428.

In *Rice v. Smith,* 9 Iowa, 570, it is said:

"Objection is made to the competency of the complainants to present this bill.  In *The State ex rel. Byers v. Bailey,* 7 Iowa, 396, and *The State ex rel. Rice v. Smith, County Judge of Marshall County, id.* 186, we held that complainants who are, and are averred to be, citizens, voters and property holders and taxpayers, had such an interest and held such relations that they might file an information for a writ of mandamus to the county judge to enforce a public duty in which they and other citizens had an interest; and the same reason holds good for their being permitted to pray an injunction to prevent the doing some act detrimental to their interest and those of other citizens of the county.  No reason is perceived why they should not be permitted to sustain such a bill either for themselves, or for them and all others in like manner interested.  These petitioners present themselves as citizens, voters, property holders and taxpayers in the county, and in one of the towns affected by these proceedings, so that, as citizens of the county, they are interested in the question of expending twenty-six thousand dollars and more in building a court

house; and in the place where it shall be built, as citizens and property holders in one of those towns.

"Besides this, there is no officer upon whom it devolves to enforce the performance of a duty upon the county judge, or to restrain him if he is about to do an act at the same time illegal and detrimental to the rights and interests of the public and of individuals. If he should undertake to build a court house at a place which is not the county seat, there is no officer whose duty it is to cause him to be restrained, whilst the right to do it would seem to belong to many.

"The petition is addressed to the Hon. J. P., judge of the eleventh judicial district of the state, and was filed in the office of the clerk of the district court in Marshall county. This is sufficient in form as a bill in equity in that court.

"The authority of the county judge to provide the public buildings is not questioned in the bill, but has [he] authority to place a court house in a town which is alleged not to be the county seat? This is the gist of the bill.

"We think the complainants show enough to sustain their bill for an injunction. For this we need not determine, at present, which of the two canvasses of the returns of the April election is authoritative.

"It is sufficient that the bill shows that the location of the county seat is in controversy, and the proceedings, in reference to it, and the state of the question, are set forth so far as to show that it is manifestly improper for the judge, in the present position of the matter, to expend more than thirty thousand dollars in the erection of a public building which must be at the county seat; and especially when it appears to the court that when its mandate shall be obeyed, Marshall will be declared the county seat."

In *Sweatt v. Fayville,* 23 Iowa, 321, the case of *Rice v. Smith, supra,* was followed and approved.

In *People ex rel. Mitchell v. Warfield,* 20 Ill. 159, it is said:

"The case before us shows that a bill in equity was filed in due form, and by proper parties, in the circuit court of Saline county, for the purpose of settling this very question, which is now pending and undetermined, and in which a temporary injunction has been issued, restraining the present defendant from keeping his office at Harrisburg, to which it is insisted by the relator, that the county seat of Saline county was removed at the election

referred to. Admitting that this court has jurisdiction to try the question in this proceeding for a mandamus, we are not bound to do so, nor is it proper that we should do so, when another court has acquired jurisdiction properly, and is proceeding to exercise it, especially when we are asked to compel a party to do a thing from which he is restrained by an injunction issued by a court of competent jurisdiction. We leave the question, therefore, to be settled by that court, which has every facility of purging the poll books, and ascertaining all the facts upon which a correct decision necessarily depends. In the meantime, as there has been, and can be, no other legal mode of determining the result of this question, the county seat must remain unchanged."

In *People ex rel. v. Wiant,* 48 Ill. 263, the case of *People ex rel. v. Warfield, supra,* is cited with approval.

On page 267 (48 Ill.) it is said:

"The case before us shows that there are no less than three bills in equity and a writ of *quo warranto* now pending in the circuit court, growing out of this controversy, by one or more of which the questions can be investigated, a re-canvass of the votes had, the polls purged, and the question settled; and admitting, as was said in *The People v. Warfield,* that this court has jurisdiction to try the question in this proceeding for a mandamus, we are not bound to do so, nor is it proper that we should, when another court has acquired jurisdiction properly and is proceeding to execute it, especially when we are asked to compel an officer to do that which he is enjoined from doing by a court of competent jurisdiction. So, in this case, the circuit court having acquired jurisdiction of the question, we must decline to take cognizance of it, and will leave it to the determination of the circuit court."

The *State ex rel. Hughlett v. Hughes, Judge, et al.,* 104 Mo. 459, is in point. Judge Brown, in speaking for the court in a unanimous opinion, said:

"Section 1147 of that article (art. 4, ch. 23, Rev. St. 1879) appoints the times and places for holding circuit courts in the Third judicial circuit, composed of the counties of Audrain, Pike, Lincoln and Montgomery. By this section but two terms of the circuit court were required to be held in Montgomery county. By the act of April 11, 1889, no change in the terms of the court to be held in either of the other counties of the circuit is made,

but the act requires that four terms of the circuit court be held in Montgomery county, two at Danville, the county seat, and two at Montgomery City, in said county. The defendants are the judge of the Third judicial circuit and the clerk and sheriff of Montgomery county. The terms of the circuit court in said county having always hitherto been held at the county seat, it was necessary that a proper house should be selected, and conveniences prepared for the transaction of business at Montgomery City. The act authorized said officers to make these preparations, and contains other provisions incident to the holding of two more terms of the circuit court at a place other than the county seat, in said county. The defendants were proceeding to perform the preparatory acts enjoined upon them by this act, when this proceeding by injunction was instituted. * * * Upon final hearing the bill was dismissed, and the relator appeals.

"The relator maintains that the defendants ought to be restrained from performing the ministerial acts required of them by said amendatory act, and essential to carry into effect its provisions for holding two terms of the circuit court at Montgomery City, on the ground that the act is unconstitutional. * * *

"While it is, perhaps, unnecessary to pass upon the question, it would seem there can be little doubt that injunction is the proper remedy for the relief sought in this action, and that the action was properly brought on the relation of the prosecuting attorney. R. S. 1889, sec. 5510; 2 High on Injunction, sec. 1327; *State ex rel. v. Court*, 51 Mo. 350."

See, also, *Braden et al. v. Stumph et al.*, 16 Lea (Tenn.) 581; *Lindsay v. Helen*, 112 Tenn. 660; *State ex rel. v. Eggleston et al.*, 34 Kan. 714; *Barnes v. Board of Supervisors of Pike County*, 51 Miss. 305; *Simpson County et al. v. Brickley et al.*, 81 Miss. 474; *Baren v. Smith*, 47 Ill. 482.

It is to be observed that in all of these cases, wherever there was an averment in the bill of the unlawful expenditure of money, injunction was held to be a proper remedy, not only to enjoin such unlawful disbursement, but also to prevent the removal of the county seat until the final determination of the question. The pivotal question in the most of these cases is as to whether such a bill may be maintained by a taxpayer. The weight of authority seems to hold that, as to the removal of a

county seat, such bill may be maintained by an elector and taxpayer, although there is considerable authority to the contrary. However, the great weight of authority is that courts of equity will not restrain the action of state officers in misappropriating public funds merely on the relation of citizens and taxpayers, the executive law officers of the state being the proper party or parties to institute suits involving the disposition of the revenues of the state. *Jones v. Reed*, 3 Wash. 57; *Birmingham v. Cheetham, Auditor, et al.*, 19 Wash. 657; *City of Tacoma et al., v. Bridges, Commissioner of Public Lands*, 25 Wash. 221; *Gibbs v. Greene*, 54 Miss. 592; *Thompson v. Canal Fund Commissioners*, 2 Abb. Pr. 248; 5 Pomeroy's Equity Jurisprudence (1905), sec. 326.

But this action is not instituted in the name of a taxpayer, but in the name of the state by one of its executive law officers in behalf of the general public, seeking in its own courts (26 Am. & Eng. Ency. of Law, 2nd Ed. 485) to prevent the unlawful disbursement of public funds and the removal of the state capital under an alleged invalid act. In order to determine whether this writ of prohibition should run, it is to be assumed that the averments of fact of the second amended petition are true. For, under the allegations of the petition, if the district court has jurisdiction, it must be allowed to first pass on the question as to the validity of the act and to try the question of fact as to the threatened removal and unlawful disbursement of funds.

In *Slack et al. v. Jacob et al.*, 8 W. Va. 612, the action was brought by John Slack, Sr., and six other electors and taxpayers, on behalf of themselves and all other citizens and taxpayers of West Virginia, except the defendant, by bill of equity in the circuit court of the county of Kanawha, in the state of West Virginia. In that case the court held that the action of the Governor could not be controlled by the process of the courts, making no distinction between the subordinate executive officers and the chief executive officer, and do not seem to have passed on the question as to whether such an action could have been maintained

by a taxpayer. We think it is clear that such an action could not have been maintained by a taxpayer.

The power of this court to issue extraordinary writs has been invoked many times since the erection of the state, and such extraordinary power should not be exercised unless the right thereto is clear.

In *Windfrey v. Benton et al.,* 25 Okla. 445, 106 Pac. 853, it was held:

"* * * A writ of mandamus would not lie to compel the justice of the peace to reverse his erroneous ruling in denying such application for change of venue, for the reason that defendants had a plain and adequate remedy by appeal or error."

In *State ex rel. Haskell, Governor, v. Huston, Judge, et al.,* 21 Okla. 782, it was held:

"Prohibition is the proper remedy, where an inferior court assumes to exercise judicial power not granted by law, or is attempting to make an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by it."

But in that case there was no adequate remedy by appeal, as relief by that means could not be afforded until final judgment was rendered in the case.

In *Evans v. Willis, County Judge,* 22 Okla. 310, it was held by this court:

"Upon an information purporting to have been presented by a private person, neither the prosecuting attorney for the county nor any other officer thereto authorized having exhibited same, the lower court having no jurisdiction to hear or determine such case on said information, and there being no other plain, speedy and adequate remedy at law for the relator, his remedy is by writ of prohibition to restrain action thereon."

In *Morrison v. Brown, Judge, et al.,* 26 Okla. 201, 109 Pac. 237, this court held:

"Prohibition, being an extraordinary writ, cannot be resorted to when ordinary and usual remedies provided by law are available."

Under the Constitution of Oklahoma, which provides for the election of state, county and township executive officers alike by

Vol. 27—40

the people, the state executive officers below the Governor, with a few exceptions, are as independent of his control in the performance of their duties as are the officers of the counties or of the townships.

Section 1, art. 6, of the Constitution provides:

"The executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor, Attorney General, State Treasurer, Superintendent of Public Instruction, State Examiner and Inspector, Chief Mine Inspector, Commissioner of Labor, Commissioner of Charities and Corrections, Commissioner of Insurance, and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books, and papers at the seat of government, and shall perform such duties as may be designated in this Constitution or prescribed by law."

Section 2 also provides:

"The supreme executive power shall be vested in a Chief Magistrate, who shall be styled 'The Governor of the State of Oklahoma.'"

None of these officers, in carrying out the mandate of the Constitution to "keep his office and public records, books and papers at the seat of government," acts as the agent of the Governor. This mandate to each of such officers separately is from sovereignty itself, and the determination of where the capital is is a judicial question.

"A political right is a right exercisable in the administration of government."

"Political rights consist in the power to participate directly or indirectly in the establishment or management of government."

The question as to where the seat of government is may be a mixed question of law and fact, or purely a question of law. The seat of government is fixed by either organic or statutory law, and the judiciary construes and interprets the same.

In *Marberry v. Madison*, 1 Cranch. 137, the Supreme Court of the United States, speaking through Chief Justice Marshall, said:

"It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each.

"So if a law be in opposition to the Constitution; if both the law and the Constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the Constitution; or conformably to the Constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty."

"A ministerial act may be defined to be one which a person performs upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of doing the act.

"A ministerial duty, the performance of which may in proper cases be required, is one in which nothing is left to discretion. It is a simple, definite duty arising under conditions admitted or proved to exist and imposed by law." (20 Am. & Eng. Ency. of Law, 2nd Ed., p. 793.)

A ministerial act, as defined in 27 Cyc., at page 793, is "an act which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment, upon the propriety of the act done."

In obedience to the mandate of section 1, art. 6 of the Constitution of this state, each executive officer of this state is required to keep his office and public records, books and papers at the seat of government.

In the second amended petition in the case pending in the district court of Logan county, it is alleged (1) that on account of the imperfect ballot title in submitting the proposition for the permanent location of the capital of this state, said election was void, and (2) that on account of said act being repugnant to the provisions of the enabling act, said election was void.

These are judicial questions over which the district court had jurisdiction (*Lozier v. Alexander Drug Co.*, 23 Okla. 1), and if the district court commits error in determining these questions, the same may be corrected by appeal or proceeding in error. It is not the province of a writ of prohibition to take the place of a proceeding in error.

The Supreme Court of the state of Louisiana has uniformly held that the chief executive, even as to ministerial acts, was not subject to be controlled by the process of the state courts. *State ex rel. McEnery v. Nichols, Governor, et al.*, 42 La. Ann. 209, was a proceeding by mandamus to compel the Governor and the Register of the Land Office to execute and deliver to the relator patents as per his contract with the state of Louisiana, but no disposition was made of the action as to the Governor except a general finding that the law and evidence entitled relator to the relief prayed for. The writ of mandamus was awarded against the Register, but not the Governor. From that judgment the Governor and the Register of the State Land Office appealed. In the Supreme Court the relator filed an answer praying that the judgment against the Register be affirmed; but, in so far as relief by mandamus against the Governor was concerned, the case remained *in statu quo*. Affirmation of the judgment was all that he prayed for.

On page 223 (42 La. Ann.) it is said:

"Whatever contrariety of opinion may have, at one time, existed on the subject, it is now a settled principle that a peremptory mandamus will go to state officers, such as Auditor, Treasurer, and Register of State Land Office, for the purpose of coercing performance of purely ministerial duties devolving on such officers by law.

"In *State ex rel. Collins v. Jumel, Auditor*, 30 Ann. 863, our predecessor said on this subject:

" 'The state is sovereign, and cannot be sued by her citizens, in her own courts, without her permission, but a civil proceeding, by which one officer of the state seeks to compel another officer of the same state to perform a ministerial duty, is not, in the proper sense of the words, a suit against the state.

" 'Nothing is more common than for a party who has a claim against the state, whether for salary as an officer, or for money due on other accounts, to have right to payment adjudicated through and by means of a mandamus against the auditing officer. It is recognized by us as a legitimate mode of ascertaining what are the rights of persons who have or who prefer claims against the state.'

"In *State ex rel. Ecuyer v. Burke, Treasurer*, 33 Ann. 969, we said that 'while fully recognizing the independence and all the rights of co-ordinate branches of the government, it is only necessary to say that it is the province of the judiciary, whenever the question is properly brought before it in judicial proceedings, to decide whether duties sought to be enforced at the hands of officers are or are not ministerial, and that it is of the essence of the judicial power to adjudge such questions,' etc.

"In keeping with this recognized principle we made mandamus peremptory in *State ex rel. Campbell v. Steele, Auditor*, 37 Ann. 353.

"Our predecessors did likewise in *State ex rel. Mentz v. Clinton, Auditor*, 28 Ann. 47; and in *State ex rel. New Orleans Republican Printing Company v. Clinton, Auditor*, 28 Ann. 72.

"These decisions are in line with those pronounced in *Marbury v. Madison*, 1 Cranch. 137; *Kendall v. United States*, 12 Peters 608, and *Board of Liquidation v. McComb*, 92 U. S. 541. Indeed, the Attorney General has made no question as to our authority in this respect.

"The district judge entertained this view and made the mandamus peremptory as to the Register, and we think correctly."

In the action in the lower court, all the officers of the executive department are joined with the Governor as parties defendant. In the Louisiana case, only the Governor and the Register of the State Land Office were joined. Mandatory relief was awarded against the Register, but not against the Governor.

The question as to whether this action was brought by the proper relator is not passed on. It appears that it was brought at the instance and by the directions of the Governor, and if necessary, it would be permissible by amendment to insert his name as relator. And as to the other defendants in the lower court, the writ being denied both as to them and the subject-

matter of the action, it is not essential to determine this question.

The writ of prohibition will be awarded, prohibiting the district court and the county attorney of Logan county from taking further proceedings in said action˙ against the Governor, but as to all other parties, and in all other respects, it is denied.

DUNN, C. J., HAYES and KANE, JJ., concur; TURNER, J., concurs in the conclusion as to the Governor, but otherwise dissents.